# JUNE TERM 1885.

57 69
67 223
67 228
67 229
57 69
81 24
57 69
115 313

## THE PEOPLE v. CHARLES VAN ALSTINE.

*Forgery of deed—Information—Statement of grantor's interest—Duplicity—
Variance—Privileged communications—Extraneous papers.*

1. In Michigan an information for forgery need not set forth whose title is to be disturbed nor what the forgery consists of; the gist of the crime is intent to defraud. How. Stat. §§ 9213, 9226.

2. An information for the forgery of a deed need not state what interest the apparent grantor has in the land described therein, so long as the land is definitely located and the deed is operative on its face.

3. There is duplicity in charging forgery and the utterance thereof in the same count, but not in charging joint respondents with forging a deed, and one of them with causing it to be recorded; the act of recording bears upon the intent and is not of itself an utterance.

4. Variance between evidence and information as to the name of the owner of land described in a forged deed is immaterial if it appears that the same person was known by both names.

5. Professional communications are not privileged when they have an unlawful purpose, such as the commission of crime; they are then in the nature of conspiracy.

6. On a prosecution for the forgery of a deed evidence that other deeds were made or intended at the time of its apparent execution is foreign to the question of its genuineness and properly excluded. So is evidence of possession under such deeds.

7. Where respondent in a prosecution for the forgery of a deed that purports to have been made by a woman since deceased, has control of the deed and refuses to produce it until he makes his defense, but then produces with it another deed that is not properly in the case, but also purports to be signed by decedent and respondent together, it is proper for the prosecution to ask whether all the signatures to both deeds were not written by the same person and were not in respondent's handwriting, and whether decedent's alleged signature was in a woman's handwriting. It would even be justifiable for the prose cution to take the ground that the other deed was also forged.

8. Testimony upon a prosecution for the forgery of a deed that respond-

ent had admitted that he had no such · deed, is not rebutted by other testimony that on another occasion he claimed to have one.

[9. A man was prosecuted for forging a deed that purported to have been made to him by his quasi wife, since dead. *Held* relevant to show that when her estate was inventoried the land deeded was spoken of in his presence as belonging thereto and that he did not claim it, but stated that some of his money had gone to its purchase and asked if he could maintain a claim against the estate for the amount.

10. The common-law disability of joint defendants to testify in a criminal case is not removed by the election of one to be tried separately unless the others themselves ask or consent to be witnesses; the request must be to the court and cannot come from the party on trial. How. Stat. § 7544.

11. The introduction of photographic copies of handwriting in a case of forgery is immaterial, whether right or wrong, if the originals are afterwards produced.

Exceptions from Hillsdale.    (Howell, J.)    April 22.— June 3.

Information for forgery.    Respondent was convicted below. Exceptions overruled.

Attorney General *Moses Taggart* for the People. A valid count will sustain a verdict: *People v. McKinney* 10 Mich. 54; *Shannon v. People* 5 Mich. 71; and the information will not be quashed though other counts are bad: *Com. v. Hawkins* 3 Gray 464; it is discretionary to require an election among counts: 1 Archb. Cr. Pr. (8th ed.) 295; *Jennings v. Com.* 17 Pick. 80; *United States v. Furlong* 5 Wh. 184; photographic copies are admissible in cases of forgery: Whart. Ev. § 133; *Com. v. Jeffries* 7 Allen 561; *Foster's Appeal* 34 Mich. 21; *Marcy v. Barnes* 16 Gray 161; *Church v. Milwaukee* 31 Wis. 513; *Ruloff v. People* 45 N. Y. 213; *Udderzook v. Com.* 76 Penn St. 340; *Hynes v. McDermott* 82 N. Y. 50; persons charged jointly with respondent are incompetent to testify for the defense: *Grimm v. People* 14 Mich. 300; a communication is not privileged if not made for a lawful purpose: 3 Barb. Cr. L. 528; Tiffany's Cr. L. 486; 1 Whart. Cr. L. § 773; *Coveney v. Tannahill* 1 Hill 33.

*E. L. Koon, Geo. A. Knickerbocker, Alpheus St. John* and *Bean, Underwood & Lane* for respondent, as to what a forgery must consist of: *Arnold v. Most* 3 G. & J. 219; *Crofts v. People* 2 Scam. 442; *Brown v. People* 86 Ill. 239;

1 Whart. Cr. L. § 691; *Barnum v. State* 15 Ohio 717; and an indictment for forgery must show an instrument prima facie effective: *Reed v. State* 28 Ind. 396; *State v. Briggs* 34 Vt. 501; *Rembert v. State* 53 Ala. 467; *State v. Smith* 8 Yerg. 150; *Com. v. Hinds* 101 Mass. 209; *State v. Wheeler* 19 Minn. 98; *Rex v. Knight* Ld. Raym. 527; *Rex v. Goate* id. 737; *Henderson v. State* 14 Tex. 503; *State v. Fisher* 65 Mo. 437; *People v. Wright* 9 Wend. 193; *People v. Stearns* 21 Wend. 420; communications with an attorney are privileged: *Alderman v. People* 4 Mich. 422; even if no fee passes: *Foster v. Hall* 12 Pick. 89; see *Bacon v. Frisbie* 80 N. Y. 394; *Clark v. Richards* 3 E. D. Smith 95; *Graham v. People* 63 Barb. 468.

CHAMPLIN, J.　The respondent, Charles Van Alstine, was convicted in the circuit court for the county of Hillsdale upon an information charging him, jointly with Charles A. Parker and Edward C. Cleveland, with the forging and uttering of a deed of forty acres of land, lying in the township of Somerset, in Hillsdale county.

The deed purported to be executed by Eleanor Van Alstine, in the presence of Parker and Cleveland, and acknowledged by the grantor before Parker, as a notary public of Lenawee county.　It bears date the 9th day of May, 1876.　The legal title to the land at the date of the deed was in Eleanor Pelton.　It was claimed by the prosecution that she was one and the same person with Eleanor Van Alstine.　She had for several years lived with the respondent, Van Alstine, and the evidence showed that he treated her as his wife, and claimed her to be such; that she had united with him in the execution of a deed of land as Eleanor Van Alstine, although she was never married to him by any formal ceremony, and her estate was administered after her death, which occurred in August, 1876, as the estate of Eleanor Pelton.　She left as heirs at law two sisters, a Mrs. Giddings and a Mrs. Wescott.　She died testate, and her will was admitted to probate in Hillsdale county, an executor appointed, her estate appraised, and the ordinary steps taken to administer her estate.　At the time the executor made his inventory, the title of record to the southeast quar-

ter of the northwest quarter of section twenty-six, township
five south, range one west, being in the town of Somerset,
county of Hillsdale, appeared to be in Eleanor Pelton, and
he included it in his inventory as property belonging to the
estate.    Afterwards, and in 1876, the respondent, Van
Alstine, placed upon record in the office of the register of
deeds for Hillsdale county a quitclaim deed of said lands,
bearing date May 9, 1876, and purporting to have been exe-
cuted by Eleanor Van Alstine to him, in the presence of the
other two respondents.    It is claimed by the prosecution
that this deed was forged by the respondent.    The case
comes here upon exceptions before judgment.

The information contains ten counts. Counsel for respond-
ent insists that the first nine are not sufficient upon which to
convict the defendant, for the reason that they contain no
allegations that Eleanor Van Alstine had any interest in the
land.

Forgery was a misdemeanor at the common law.    From
the earliest times in the history of the criminal law of Eng-
land statutes have been passed upon the subject.    As early
as 1413 a statute (1 Hen. V. ch. 3) was enacted which
recited that many persons had been deprived of their prop-
erty by false deeds, wherefore it was enacted " that the party
so grieved shall have his suit in that case, and recover his
damages; and the party convict shall make fine and ransom
at the king's pleasure."    Again, the English statute of 5
Eliz. ch. 14, § 2, prohibited the making or forging of any
false deed, etc., "to the intent that the state of freehold or
inheritance of any person in lands, etc., shall not be molested,
troubled, defeated, recovered, or charged;" and the third
section fixes a penalty for any person to forge or make any
false charter, deed or writing, to the intent that any person
shall have or claim any estate or interest for term of years of,
in or to any lands.    The forgery of deeds was made felony,
without benefit of clergy, by 2 Geo. II. ch. 25.    The prece-
dents framed under the English statutes, and especially those
under the second section of 5 Eliz. ch. 14, on account of the
particular phraseology of the enactments, uniformly set out

the title of the party whose estate in the land was intended to be molested. 2 Stark Cr. L. 481; 3 Chit. Cr. L. 1062. The necessity of doing so is apparent from the provisions of the law. It is an essential ingredient of the offense, and must therefore be stated.

But our statute is more broad and general in its terms. It provides that every person who shall falsely make, alter, forge or counterfeit any deed with intent to injure or defraud any person shall be punished, etc. (How. Stat. § 9213), and § 9226 provides that in any case where an intent to defraud is required to constitute the offense of forgery, or any other offense that may be prosecuted, it shall be sufficient to allege in the indictment an intent to defraud, without naming therein the particular person or body corporate intended to be defrauded, and on the trial of such indictment it shall be deemed sufficient, and shall not be deemed a variance, if there appear to be an intent to defraud the United States, or any state, county, city, or township, or any body corporate, or any public officer in his official capacity, or any copartnership or member thereof, or any particular person. There is no statutory definition of forgery. At the common law it is defined to be the " making of a false document with intent to defraud ;" and the offense may be said to be complete when any person falsely makes any of the writings enumerated in the statute " with intent to deceive in such a manner as to expose any person to loss or to the risk of loss."

There is such a marked difference between the English and our statute upon the subject, that neither precedents nor decisions based upon the former can be of service or authority under the latter, which, as we have seen, does not limit the operation of the statute to persons having interests in the same or other lands; and to so limit it would seem to be in direct contravention of the statute,—would greatly narrow its operation, and defeat its most important objects. It is apparent, upon the most cursory consideration, that fraud by means of a false or forged deed may be perpetrated, not only upon the owner of the land, but upon strangers to the title who are induced to rely upon the genuineness of the

forged deed to advance or loan money upon the faith of the legal validity of such instrument. It was long ago held that a person could be guilty of forgery in signing his own name to a deed of land which he had already conveyed, when he antedated the instrument for the purpose of defrauding. 2 Russ. Cr. 322, 323. In this view of the statute it can neither be necessary nor advisable to set out in the information the title of the person intended to be defrauded, nor in what the forgery consisted. It is not necessary, for the reason that such facts are not essential ingredients of the offense. I do not consider it advisable as a matter of general practice to do so, because, if stated, the proof must correspond with the averment, or the defendant must be acquitted. 2 East's Cr. L. 988.

It was said in *People v. Marion* 28 Mich. 255, that it is proper to set out, in at least one count of the information, with particularity, in what the forgery consisted; but the public prosecutor is not obliged to do so, and when he does, it is done ex mera gratia to the accused. I do not think it necessary that the information should contain any averment that Eleanor Van Alstine had any interest in the land at the time it is claimed the forgery was committed. The gist of the offense is the intent to defraud. The validity of the objection depends entirely upon the effect and operation of the statute upon which it is founded, and it is usually sufficient if the information is so framed that the offense is described in the words of the statute, or according to its legal effect and operation. Where the instrument alleged to have been forged is one enumerated in the statute, and appears to be complete on its face, to be effectual, all that is necessary is to aver that the act was done with intent to defraud. But how or in what manner the party was to be defrauded, is no ingredient of the crime, but is mere matter of evidence, which all the authorities agree need not be set out in the information. *West v. State* 22 N. J. Law 212, Archb; Cr. Pro. 23, 194; 2 East's Cr. L. 989, § 59; *The King v. Powel* 2 W. Bl. 787; *Taylor's Case* 1 Leach 215; *Rex v. Goate* 1 Ld. Raym. 737.

The land which this deed purported to convey had an

actual potential existence, definitely described and located, and the deed on its face appeared to work some effect upon the property, and was complete in itself for that purpose. It did not require the aid of averments of extrinsic facts to render its deception complete. I do not think the distinction which counsel for respondent seeks to raise between executed and executory contracts exists. The test, whether the party can be guilty of a forgery, does not consist in determining whether the instrument forged, if genuine, would be of any force or effect. A draft, falsely made, is no less a forgery because the drawee has no funds, and is under no obligation to pay if the draft had been genuine. A deed falsely made by a grantor, after he had conveyed all interest in the land, is no less a forgery because, if genuine, it would convey no title. Forgery may be committed when the name forged is fictitious, and I can see no reason why it should be necessary to aver what interest the alleged grantor, whose name is forged, had in the land described in the deed. In some cases it would be immaterial, and in others mere matter of evidence, bearing upon the intent to defraud, as it is in this case.

The seventh and eighth counts were each objectionable on the ground of duplicity. Each charges the respondents jointly with the offense of forgery. The seventh charges them also with the offense of uttering the forged deed, while the eighth charges Van Alstine alone with uttering it. This is uniting two substantive offenses in the same count, and is not permissible. It is claimed that the ninth count is bad for duplicity, but I do not think it is open to this objection. It charges the respondents jointly with forging the deed and certificate, details the particular manner wherein the forgery consists, and then avers that Van Alstine falsely caused the deed to be recorded. I do not agree with counsel for respondent that this was an effort to charge that Van Alstine uttered the deed knowing it to be a forgery. It is rather directed to the scheme of all three to defraud, and bears upon the question of intent. It is, in other words, an allegation of an act showing the intent of the parties charged with the forgery.

The tenth count is a compliance with the suggestion of Judge Christiancy in *People v. Marion* 28 Mich. 255, and is as follows:

"And the said prosecuting attorney of said county, prosecuting as aforesaid, further gives the court now here to understand and be informed that heretofore, to wit, on the twenty-fifth day of August, A. D. 1876, at the township in the county of Hillsdale aforesaid, one Eleanor Van Alstine died seized of certain real estate, situate in the township of Somerset aforesaid, in the county aforesaid, and known and described as the southeast quarter of the northwest quarter of section twenty-six, town five south, range 1 west, and that afterwards, heretofore, to wit, on the sixteenth day of April, A. D. 1877, at the township of Somerset, in the county aforesaid, Charles Van Alstine, Charles A. Parker and Edwin C. Cleveland did falsely and feloniously make, forge and counterfeit a certain paper writing, being or purporting to be a deed or conveyance from the aforesaid Eleanor Van Alstine to the said Charles Van Alstine of the aforesaid described lands, situate in the township of Somerset, in said county, and did then and there falsely and feloniously make, forge and counterfeit on the back of the aforesaid deed or conveyance a certain other paper writing being or purporting to be a certificate of acknowledgment of the execution by the said Eleanor Van Alstine of the aforesaid deed or conveyance from the aforesaid Eleanor Van Alstine to the said Charles Van Alstine before the said Charles A. Parker, a notary public in and for the county of Lenawee, and State of Michigan, which said deed or conveyance was of a nature proper to be recorded according to the law; and the same, together with the said certificate of acknowledgment, afterwards, to wit, on the sixteenth day of April, A. D. 1877, was duly recorded in the office of the register of deeds in and for the county of Hillsdale and State of Michigan, in Liber 72 of Deeds, on page 611, with intent to defraud, contrary to the form of the statute in such case made and provided," etc.

Against this count it is urged

1st. That respondent could not be convicted under it because the evidence showed that the title of the land was in Eleanor Pelton.

2d. If it should be held good, there is no proof that the forgery was committed in Hillsdale county.

Neither objection can be sustained.   The evidence showed that Eleanor Pelton and Eleanor Van Alstine was the same person, and, so far as that became material, the evidence, both from the witnesses of the People and the respondent, tended to prove that fact.   The evidence also tended to prove that the forgery charged was committed in Hillsdale county.   It was testified to by Mr. Pease that respondent told him that the deed was made out at his house in the spring or fore part of summer, 1876, at Somerset, Hillsdale county.   At this time he showed witness the deed, which the witness identified as the one charged in the information to be a forgery.   Respondent had previously shown this deed to the witness Mercer, on town-meeting day, 1877, at the hotel in Somerset Center, and finally the respondent's witnesses testify that the deed in question was made and executed at respondent's residence in Somerset.

The other errors alleged pertain to the rulings of the court upon the trial, and to the charge of the court and his refusal to charge.   The exceptions taken upon the trial were numerous, but I shall only discuss those referred to in the brief of counsel for respondent, and which they have considered of sufficient importance to call our attention to.

The first relates to the testimony of Thomas J. Hiller.   It appeared from his testimony that he was a practicing attorney at Hudson; that he had known respondent for fifteen years or more, but had never been engaged by him in any professional capacity.   He testified that he had a conversation with respondent; that respondent did not ask him professionally about his legal rights in connection with that statement; that he at no time told him in any shape that he wanted to employ him; that in this conversation a statement was made to him by respondent, and certain questions asked with regard to it, and upon which facts he gave him an opinion, but respondent gave no intimation that he wanted his assistance at all.   The counsel for respondent objected to the witness stating the conversation, on the ground that it was privileged.   The objection was overruled, after counsel for the People stating to the court what he expected to prove by the witness; and

tne witness, after fixing the date of the occurrence as December, 1876, testified as follows:

" I cannot give the exact language, but I can give the substance of it, and I think nearly the language. He came into my office and said, ' Squire, I want to talk to you.' I stepped from the desk where I was writing, and we stepped into the back room, and he took a chair and sat down in front of me, and I said, ' Charlie, what is it ?' He said : ' Some years ago my wife and I bought forty acres of land up there and took the title in her name. I paid all, or nearly all, that has been paid on it. There was an agreement between her and me when certain family matters were arranged she should deed the property to me. She is now dead. The deed never has been made, and I have not a scratch of a pen to show for it. Now, can I have a deed made out of the piece of land from her to me and put on record ?' I replied, ' No, sir.' He said, ' Why ?' I replied, ' Because it would be forgery.' He said, ' How forgery ?' I replied : ' Because you change the channel of the title in it. It now goes by her heirs, and you would change it to yours. Besides, if some one should write her name on the deed and she is not here to acknowledge it '— He replied, ' Yes ; but deeds are often made and not acknowledged for a long time afterwards.' ' I am aware of that, Charlie,' I replied, ' but the law requires the officer to put the exact date of the acknowledgment on the instrument, and unless it purports to be acknowledged prior to her death it would not be good for anything on its face. And I said further that ' there is not any man in the world that can touch that deed with anything like safety.' After I said that I walked out of the room, and he followed me. He walked down to the door, and I stepped around behind my table, and I faced him. He said to me, ' Squire, then you think it can't be done ?' I replied, ' Charlie, I know it can't be done.' And he went away. That is the substance of the conversation between him and me, about as it occurred. I have had no conversation with him since about it."

The counsel for respondent then moved to strike out the testimony, on the ground that it was privileged; which motion the court overruled. The counsel insists that this was error, and in support they cite us to Alderman v. People 4 Mich. 414–422; Hamilton v. People 29 Mich. 173, and Passmore v. Passmore 50 Mich. 626. These cases lay down the rule,

everywhere recognized, that the privilege is the privilege of the client, and not of the attorney, and may be waived by him. But there are exceptions to the general rule, based upon public policy and public security. Professional communications are not privileged when such communications are for an unlawful purpose, having for their object the commission of a crime. They then partake of the nature of a conspiracy, or attempted conspiracy, and it is not only lawful to divulge such communications, but under certain circumstances it might become the duty of the attorney to do so. The interests of public justice require that no such shield from merited exposure shall be interposed to protect a person who takes counsel how he can safely commit a crime. The relation of attorney and client cannot exist for the purpose of counsel in concocting crimes. The privilege does not exist in such cases. 1 Gilb. Ev. 277; *Greenough v. Gaskell* 1 Mylne & K. 98; *Coveney v. Tannahill* 1 Hill (N. Y.) 33; *Bank of Utica v. Mersereau* 3 Barb. Ch. 528; *People v. Blakeley* 4 Park. Cr. Rep. 176; 1 Whart. Cr. L. § 773; Roscoe's Cr. Ev. 150.

Defendant's counsel claim that it was error to exclude the testimony of Seton Flint as to Maple's deed. The defense asserted that the deed in question was the genuine deed of Eleanor Van Alstine, and counsel for respondent produced a witness who testified that she was present at Van Alstine's in May, 1876, and was engaged in making a dress for Eleanor; that respondents Potter and Cleveland came to Van Alstine's on that occasion, and some papers were drawn and were executed by respondent and Eleanor, and she was requested to sign her name as a witness, which she did. A deed was shown her from Charles Van Alstine and Eleanor Van Alstine to respondent Cleveland of a parcel of land, which she identified as the one she witnessed. She also testified that, shortly after, Eleanor Van Alstine was requested to come from the room where Eleanor and she were and sign a deed; that the door was open, and she saw her take up the pen and write; that she asked her after she returned to the room what paper it was, and she told her that it was a deed of her forty

acres to Charles; that they had arranged it so that whichever
should die first the other should have the property belonging
to the other; that after Potter and Cleveland went away,
she saw respondent and Eleanor comparing this paper she
had signed with a deed they had of Walters; that a short
time before Eleanor died, and during her last sickness, she
gave this deed to witness, with instruction that in case of her
death she should deliver it to Charles, but if she got well to
return it to her; and she identified the deed in question as
the one so handed to her. This deed from respondent and
Eleanor to Cleveland was produced and read in evidence, and
it was claimed that before the deed was executed to Cleve-
land, Van Alstine had agreed to convey the same land to one
Maple, and did actually execute the deed but that the trade
fell through; and the witness Flint was interrogated as to
the execution of this prior deed. The testimony was right-
fully excluded, as was that of Swartwout with regard to
Cleveland's possession of this land, and other testimony con-
cerning the Cleveland deed. It was all foreign to the inquiry
respecting the genuineness of the deed from Eleanor to re-
spondent, and could have no bearing upon the truth or fals-
ity of the latter instrument. It would not have been error to
have excluded all evidence of the deed to Cleveland. *Vin-
ton v. Peck* 14 Mich. 287.

Witnesses were permitted to testify that the signature of
Eleanor Van Alstine to the deed from Charles and Eleanor
to Cleveland was in the handwriting of respondent. This is
claimed as error. This testimony came into the case in this
way: The respondent had introduced both the deed from
Charles and Eleanor Van Alstine to Cleveland, and from
Eleanor Van Alstine to respondent, in evidence as genuine
papers. The public prosecutor then called the attention of
witnesses to the signatures of these deeds, and inquiry was
made whether these signatures were all written by the same
person; also, whether they were not all in the handwriting
of respondent; also, whether they were in the handwriting of
a woman.

I do not think any error was committed in admitting the

testimony under the circumstances in which the questions arose. The circumstances were peculiar. The deed claimed to be forged was shown to be in the possession or under the control of the respondent. He had been notified to produce it. He chose not to do so until he came to the introduction of testimony in his defense. The People, in the mean time, were compelled to rely upon secondary evidence to sustain the prosecution. The person whose name it was claimed was forged, was dead. The People had made as full proof as they could do under the circumstances, and after the deed had been produced by respondent with a claim of its genuineness, the only way they could attack it was by testimony going to show that the signature was not that of Eleanor Van Alstine, and I think the testimony was legitimate and proper for that purpose. Neither do I think it tended to rebut the testimony of Loury (a witness for the prosecution) as to admissions or statements made by the respondent, that he had no deed of the premises from Eleanor, to show by another witness that on another occasion he claimed to have a deed.

Witnesses were permitted to testify that, at the time of the appraisal of the property belonging to the estate of Eleanor Pelton, the land in question was entered upon the inventory as the land of the deceased, and was talked of as her property in the presence of respondent, and he made no claim thereto. This testimony was relevant. How much weight it might eventually be entitled to would doubtless depend upon its relation to other testimony in the case. One of the persons then present testified that the respondent claimed to him that some $400 of his money had gone into the purchase of the land, and made some inquiry as to whether he could present it as a claim against the estate. Complaint is made that the prosecutor claimed that the deed from Charles and Eleanor Van Alstine was also forged. I think the course pursued was justified by the case of *Perkins v. People* 27 Mich. 386.

The respondent's counsel proposed to swear as witnesses Charles A. Parker and Edward Cleveland, who were jointly informed against, and who had not yet been tried, acquitted,

or discharged. The prosecuting attorney objected to their being sworn, for the reason that they were charged under the same information, and neither had been acquitted or discharged or convicted under that charge. The court sustained the objection. No question is made that they were not competent witnesses at the common law; but it is claimed here, but not in the court below, that they are competent under How. Stat. § 7544. Section 7544 of Howell's Statutes provides that "No person shall be disqualified as a witness in any criminal case or proceeding by reason of his interest in the event of the same as a party or otherwise. * * * Provided, however, that a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness." The objection made was aimed at their common-law disability. The statute has removed this disability only in certain cases mentioned in the proviso of the statute. Where parties are jointly indicted or informed against, and one chooses a separate trial, he cannot force a co-respondent to testify without his consent or request. No offer or suggestion was made in this case that the witnesses were competent under the statute, or had consented or requested to be witnesses. The court was not in any manner informed that the witnesses were qualified by having made the request. Such request should be made to the court, otherwise it is the duty of the court to protect them in the privilege which the law accords to them of not being obliged to criminate themselves. The request must proceed from the party charged. No one has the right to ask them to be sworn and put them upon their refusal. The impropriety of such course is apparent, and no request can be implied, in the absence of one appearing upon the record. These parties were not upon trial in this case, and consequently were not represented there by attorneys. Had they been upon trial, and their attorney had offered them as witnesses, it might have been considered as a request made by them. The objection was rightly overruled.

Numerous requests to charge, and exceptions to the charge as given, were made. I have carefully considered all of them,

and while I can see that some parts, isolated from the context, or selected out of the charge as given, would be error, yet when the whole is taken together, the law, as applicable to the facts, is correctly given. Objection was made to the reception of photographic copies of that portion of the deed which embraced the signature of the grantor, and of comparisons of handwritings instituted therewith. These were introduced before the original was put into the case, and we do not feel called upon to pass upon the correctness of the rulings made in reference thereto, as they become unimportant after the introduction of the original in evidence.

The exceptions are overruled, and the court below is advised to proceed to judgment.

The other Justices concurred.