## THE STATE OF KANSAS v. W. H. HILTON.

1. FORGERY; *Instrument Good on its Face; Extrinsic Evidence.* A false instrument or writing, made out with criminal intent to defraud, which is good on its face, may be legally capable of effecting the fraud, even though inquiry into extrinsic facts or matters not appearing on its face would show it to be invalid, even if it were genuine; therefore, the forging of such an instrument or writing is an offense under the statute. (Crimes Act, §§ 129, 139.)

2. FORGERY, *Facts Constituting.* One B. had his life insured in a mutual benefit insurance company of Ohio; one of the officers of the company received a notice that B. had died in this state; upon receiving the notice he forwarded blanks for proof of death to the address of the beneficiary in the policy of the alleged deceased, the blanks being in the forms of proofs of death in use by the company; the defendant was appointed a committee to investigate the cause of the death of B., and after a short time the proofs of death were sent by him from this state to an officer of the insurance company in Ohio; these proofs of death were false and untrue, because in fact B. was not dead as alleged; the papers returned by the defendant to the company were headed "Official Notice and Proof of Death;" on the first page there appears in blank, "The foregoing and the report of the committee, together with the certificates thereunto annexed," with certain questions purporting to be answered concerning the death

of the alleged deceased; on page two is the certificate of the attending physician, with the statement of an officer under oath that the physician is respectable, entitled to credit, and engaged in active practice; on the third page is a report of the council examining committee on the cause of the alleged death, and on the same page an undertaker's affidavit and a clergyman's certificate — the first stating when the remains of the alleged deceased were interred, and the other giving the date of the funeral of the alleged deceased; on the fourth page are blanks for certain officers of the insurance company to sign, setting forth that they have examined the reports and certificates of the death of the member, and approved the same; the blanks on this page were never signed or filled up. Upon receiving the proofs of the alleged death, the insurance company discovered that there was a material discrepancy in the proofs presented, in this: From the certificate of the attending physician and the statement of the committee appointed to examine the cause of the alleged death, it appeared that the alleged deceased died May 2, 1885, while the undertaker's affidavit and clergyman's certificate showed that the funeral of the alleged deceased and his burial were prior thereto, to wit, on March 4, 1885; the defendant was thereupon arrested for the forgery of the undertaker's affidavit and the clergyman's certificate. *Held*, That the false affidavit and certificate which the defendant executed must be treated as complete and separate instruments, and the same as though they were wholly detached from the other papers constituting the proofs of death; and being in the exact form required by the insurance company, and not being in any way invalid or defective upon their faces, are the subject of forgery within the terms of the statute. (Sections 129 and 139, *supra*.)

*Appeal from Mitchell District Court.*

ON October 22, 1885, there was filed in the district court of Mitchell county, by the county attorney of that county, an information containing twelve counts, against *W. H. Hilton* and *Joel Miley*. The first and second counts thereof were in words and figures, to wit:

"*1st Count*. I, F. J. Knight, county attorney, of, within and for the county of Mitchell, and state of Kansas aforesaid, in the name, by the authority, and on behalf of the state of Kansas, come now here and give the court to understand and be informed that on or about the 20th day of June, 1885, and at and within the county of Mitchell and state of Kansas aforesaid, one W. H. Hilton and one Joel Miley, persons then and there being, unlawfully, falsely, fraudulently and feloni-

ously then and there did make, forge and counterfeit one certain instrument and writing purporting to be the act of another, that is to say, of N. G. Munn, by which instrument and writing a certain pecuniary obligation purported to be transferred, the said instrument and writing then and there being in the words and figures following, that is to say :

"'UNDERTAKER'S CERTIFICATE.— I, N. G. Munn, do hereby certify that I am an undertaker, residing at No. — street, city of Mitchell, state of Kansas, and as such undertaker I attended the funeral of C. W. Brown, and that his remains were interred in —— cemetery at (city or town of) Mitchell, on the 4th day March, 1885.            · N. G. MUNN.

[Signature of Undertaker.]

'Sworn and subscribed to before me, this 22d day of June, 1885.'
                                              S. PEELE, J. P.'

With the intent then and there, and thereby falsely, unlawfully and feloniously, to cheat and injure and to defraud of the sum of five thousand dollars the National Union of Mansfield, Ohio, a corporation duly organized, incorporated, existing, and acting under and by virtue of the laws of the state of Ohio, which said corporation, on or about the 12th day of July, 1884, issued to one Sarah Brown, the wife of the said C. W. Brown, one certain certificate or policy of insurance, whereby the said corporation, for a valuable consideration, well and truly undertook and promised to pay to the said Sarah Brown the sum of five thousand dollars upon the decease of the said C. W. Brown and the reception by said corporation of proof of such decease, and which said certificate or policy of insurance was valid, outstanding and in force at the time of the false making, forging and counterfeiting of the aforesaid instrument and writing; and the said W. H. Hilton and Joel Miley, so as aforesaid, did falsely make, forge and counterfeit the aforesaid instrument and writing, for the purpose and with the intent of causing the said instrument and writing to be presented to the said corporation as and, for proof of the decease of the said C. W. Brown, and with the intent to procure from the said corporation, and to cheat and defraud the said corporation out of the sum of five thousand dollars, which the said corporation had, by the terms of its said certificate and policy of insurance, undertaken and agreed to pay upon the reception by the said corporation of proof of the decease of said C. W. Brown.            ' ',

"*2d Count.* I, the undersigned, county attorney of said county, do hereby give the court here to understand and be informed, that on or about the 20th day of June, 1885, and at and within the county of Mitchell and state of Kansas as afore-

said, one W. H. Hilton and Joel Miley, persons then and there being, then and there unlawfully, falsely, fraudulently and feloniously did make, forge and counterfeit one certain instrument and writing purporting to be the act of another, that is to say, of H. G. Miller, by which instrument and writing the right and property of, in and to the sum of five thousand dollars purported to be affected, the said instrument and writing then and there being in the words and figures following, that is to say:

"'CLERGYMAN'S CERTIFICATE.— I, H. G. Miller, do hereby certify that I am a clergyman, residing at Blue Hills, Kansas, and that I officiated at the funeral of the late C. W. Brown on the 4th day of March, 1885.

H. G. MILLER.<br/>[Signature of clergyman.]'

With the intent then and there, and thereby falsely, unlawfully and feloniously to cheat and injure and to defraud of the sum of five thousand dollars the National Union, of Mansfield, Ohio, a corporation duly organized, incorporated, existing and acting under and by virtue of the laws of the state of Ohio, which said corporation, on or about the 12th day of July, 1884, issued to one Sarah Brown, the wife of the said C. W. Brown, one certain certificate or policy of insurance, whereby the said corporation, for a valuable consideration, well and truly undertook and promised to pay to the said Sarah Brown the sum of five thousand dollars upon the decease of the said C. W. Brown and the reception by said corporation of proofs of such decease, which said certificate or policy of insurance was valid, outstanding and in force at the time of the false making, forging and counterfeiting of the said instrument and writing as aforesaid; and the said W. H. Hilton and Joel Miley, so as aforesaid, did falsely make, forge and counterfeit the aforesaid instrument and writing, for the purpose and with the intent of causing the said instrument and writing to be presented to the said corporation as and for proof of the decease of the said C. W. Brown, and with the intent to procure from the said corporation and to cheat and defraud the said corporation out of the said sum of five thousand dollars, which the said corporation had, by the terms of its said certificate and policy of insurance, undertaken and agreed to pay upon the reception by the said corporation of proof of the decease of the said C. W. Brown."

The alleged proof of death and the papers to which the undertaker's certificate and the clergyman's certificate above referred to were attached, were in the following words and figures, to wit:

The State v. Hilton.

#### OFFICIAL NOTICE AND PROOF OF DEATH.

SENATE OF NATIONAL UNION,
HALL OF MANSFIELD COUNCIL, NO. 85,
LOCATED AT MANSFIELD, STATE OF OHIO.

*To Geo. W. Harn, Senate Secretary, National Union:* By vote of this Council we are instructed to certify that friend Charles W. Brown, a 5th-rate member of this Council, died at Blue Hills, state of Kansas, in good standing in the order, on the 2d day of May, 1885, at 3 o'clock P. M. Deceased was admitted to the order May 3d, 1884; residence at date of initiation, Indianapolis, Ind.; age assessed at initiation, 28 years; amount of first assessment, $1\frac{41}{100}$; age at death, 29 years; amount of last assessment, $1\frac{45}{100}$; No. of benefit certificate, 4,000; No. on roll-book, 44; cause of death, congestion of the lungs; first assessment paid by deceased at initiation, No. 12; deceased was suspended ———; cause of suspension, ———; deceased was reinstated ———; assessments not paid during suspension, ———; last assessment paid by deceased, No. —; total amount paid by deceased to benefit fund, $15\frac{65}{100}$; residence at time of death, Blue Hills, state of Kansas; person or persons named in the benefit certificate to whom the benefit is to be paid, Sarah Brown, wife.

##### QUESTIONS TO BE ANSWERED.

Are all the persons named in the benefit certificate living? Ans. Yes. Are any of the beneficiaries minors? If so, give the name and age. Ans. No. Has a guardian of the estate of the minor beneficiary been appointed? Ans. There are no minors. Where do the beneficiaries reside? Ans. In Mitchell county, Kansas.

The foregoing and the report of the committee, together with the certificates hereunto annexed, were read in open Council on the 5th day of August, 1885, approved, noted in Council minutes, and ordered to be transmitted herewith to the Senate secretary.

In witness whereof, we have hereunto set our hands and affixed the seal of the above-named Council, on this —— day of ——, 188—.

[Council Seal.] Yours, in L., P., T.,
————————, *Council President.*
————————, *Council Secretary.*

##### ATTENDING PHYSICIAN'S CERTIFICATE.

———— STATE OF ————, 188—.

This is to certify, that I was the attending physician in the

last sickness of Charles W. Brown, and that he died at Blue Hills, state of Kansas, on the 2d day of May, 1885, at 3 o'clock P. M.; cause of death, congestion of the lungs; duration last sickness, three days.

QUESTIONS TO BE ANSWERED.

1. How long have you practiced medicine?   Ans.  Thirteen years.

2. Where did you receive your medical education?   Ans. Graduated Keokuk, Iowa.

3. Name of deceased?   Ans. Charles W. Brown.

4. How long, if ever, were you the medical adviser of deceased?   Ans.  Only in his last illness.

5. Had deceased any other medical adviser?   If so, give name and address.   Ans.  No.

6. Date of your first prescription, or visit, in last sickness of deceased?   Ans.  April 30th.

7. Had the deceased been suffering from this illness before you prescribed for him?   If so, how long?   Ans.  No.

8. Date of your last visit?   Ans.  May 2d, 1885.

9. Were there any preëxisting diseases, habits, tendency to disease, or infirmities which may have had any influence in causing or hastening deceased's death.   Ans.  No.

10. Give an account of the principal symptoms and progress of the disease?   Ans.  Chilliness, dys—— cough, spitting of blood, rapid pulse, and prostration.

11. State the cause of death, and whether or not there was a post-mortem examination; if so, what was shown by it? Ans.  Congestion of lungs; no post mortem.

12. Was there anything in the habits of deceased, his occupation or family history that rendered him liable to this disease or any other?   Ans.  No.

13. State any other facts pertaining to last sickness and death of deceased?   Ans.  I have none.

J. MILEY, M. D.
[Signature of attending physician.]

STATE OF KANSAS, COUNTY OF MITCHELL, ss.—Personally appeared before me, on this 16th day of June, 1885, the above-named ——— ———, personally known to me as the physician whose name is subscribed to the foregoing affidavit, and whom I know to be a respectable physician, entitled to credit, and engaged in active practice at Beloit, county of Mitchell and state of Kansas, and made oath before me, a

clerk of district court, that the foregoing statement made by him is true.

Witness my hand and official seal, the day and year above stated.

[Seal.]        JOHN MEHL, *Clerk of District Court.*

REPORT OF COUNCIL EXAMINING COMMITTEE ON CAUSE OF DEATH.

HALL OF ——, COUNCIL No. ——, N. U.,    }
LOCATED AT ——, COUNTY OF ——, STATE OF ——. }

*To the Officers and Members of above Council N. U.:* Your committee appointed to investigate the cause of the death of friend Chas. W. Brown, late a 5th-rate member of this Council, and also of all the circumstances attending and connected with said death, do hereby report that they have duly made such investigation, and report the following facts:

Cause of death, congestion of lungs; date of death, 2d day of May; duration last sickness, just three days; place of death, Blue Hills, Mitchell county, Kansas; name and address of attending physician, Joel Miley, Beloit, Kansas; name and address of undertaker, N. G. Munn, Blue Hills district; cemetery and town where buried, county grave yard, in vicinity of church; residence of deceased at time of death, Blue Hills, Mitchell county, Kansas.

REMARKS: I learned on inquiry that friend Brown's habits of life were correct, and health very good up to a very short time before his last illness.

Signed by    W. H. HILTON,
[Council seal.]          ——— ———,
                     ——— ———,
Attested by                  *Committee.*

——— ———, *Secretary.*
——— ———, *President.*
Dated ——— 188 .
Name and address of treasurer of Council, ——— ———.

UNDERTAKER'S CERTIFICATE.

I, N. G. Munn, do hereby certify that I am an undertaker, residing at No. —— street, city of Mitchell, state of Kansas, and as such undertaker I attended the funeral of C. W. Brown, and that his remains were interred in —— cemetery, at city of Mitchell, on the 4th day of March, 1885.

N. G. MUNN.
[Signature of undertaker.]

Sworn and subscribed before me, this 22d day of June, 1885.
[Seal of court.]             S. PEELE, J. P.

[CLERGYMAN'S CERTIFICATE.

I, H. G. Miller, do hereby certify that I am a clergyman, residing at Blue Hills, and that I officiated at the funeral of the late ———, on the 4th day of March, 1885.

H. G. MILLER.
[Signature of clergyman.]

MEDICAL DIRECTOR'S CERTIFICATE.

——— ——— 188—.

To ——— ———, *Senate Secretary:* I hereby certify that I have examined the within reports and certificates, and believe them to be ——correct, and ——approve of including the within-mentioned death in the next assessment, and of issuing a draft on the benefit fund in favor of the beneficiaries for the amount they are entitled to, in accordance with the laws and usages of the order relating thereto.

Record and publish the cause of death as follows:———.

REMARKS: ———.

[Signed] ——— ———, M. D.,
*Medical Director of the Senate of the N. U.*

CERTIFICATE OF THE PRESIDENT OF THE SENATE.

——— ——— 188—.

To ——— ———, *Senate Secretary:* I hereby certify that I have examined the within reports and certificates, and believe them to be ——correct, and hereby ——approve of including the within-mentioned death in the next assessment, and of issuing a draft on the benefit fund in favor of the beneficiaries for the amount they are entitled to, in accordance with the laws and usages of the order relating thereto.

REMARKS: ———.

[Signed] ——— ———,
*President of the Senate of the N. U.*

Trial had at the October Term, 1885. On November 5, 1885, the jury returned a verdict of guilty against the defendant Hilton, of the crime of forgery in the third degree, as charged in the information. Subsequently a motion in arrest of judgment was filed, and also a motion for a new trial. These were overruled, and the defendant was sentenced to be confined at hard labor in the penitentiary of the state for the term of seven years from November 13, 1885, and also was adjudged to pay all the costs of the prosecution, taxed at $204.30. He appeals.

*H. A. Yonge, Horace Cooper,* and *Holt & Hicks,* for appellant.

*S. B. Bradford,* attorney general, *F. J. Knight,* county attorney, and *A. H. Ellis,* for The State.

The opinion of the court was delivered by

HORTON, C. J.: The facts in this case are these: Charles W. Brown had his life insured in a mutual benefit insurance company of Mansfield, Ohio, called "The National Union," for the sum of $5,000, payable, on proof of his death, to Sarah Brown, his wife. This insurance company conducted its business chiefly through a number of men selected by the policy-holders, who constituted a body called the senate of the National Union. The defendant was a policyholder in the company, and formerly resided at Mansfield. He held an office in the company known as deputy senator; the duty of such officer was, in part, to organize councils, which bore the same relation to the senate that subordinate lodges of masons bear to the grand lodge of the state. He located at Beloit, in this state, in the spring of 1885. Soon after, the secretary of the council to which Charles W. Brown belonged, received notice that he had died at Blue Hills, Mitchell county, in this state. Upon the receipt of this intelligence, the secretary forwarded blanks for proof of death to the address of Mrs. Sarah Brown, the blanks being the forms of proof of death in use by the company. The defendant was then appointed by the council to which Brown belonged a committee to investigate the cause of his death, and after a short time the proofs of death were sent by the defendant to the secretary of the council. Dr. Joel Miley made affidavit that Brown died May 2, 1885, after an illness of three days; and John Mehl made a statement that Miley was a respectable physician, entitled to credit, and in active practice. The affidavit of Miley was false, though made and signed by himself. The defendant made a statement, signed by himself, upon the third page of the proof of death, that Brown died May 2, 1885, but this

was also false. Attached to this proof of death were the following affidavit and certificate:

"UNDERTAKER'S CERTIFICATE.—I, N. G. Munn, certify that I am an undertaker, residing at No. —— street, city of Mitchell, state of Kansas, and as such undertaker I attended the funeral of C. W. Brown, and that his remains were interred in —— cemetery, at Mitchell, on the 4th day of March, 1885.                                              N. G. MUNN.

"Sworn and subscribed before me, this 22d day of June, 1885.
S. PEELE, J. P."

"CLERGYMAN'S CERTIFICATE.— I, H. G. Miller, do hereby certify that I am a clergyman, residing at Blue Hills, Kas., and that I officiated at the funeral of the late C. W. Brown on the 4th day of March, 1885.            H. G. MILLER."

Upon receiving the papers containing the alleged proof of death, the secretary of the senate of the National Union at once discovered that in the statement of the defendant it appeared that Charles W. Brown had not died until May 2, 1885, while the undertaker's and clergyman's certificates showed that Brown had been buried on March 4, 1885. The secretary at once wrote to the defendant as to this discrepancy, and he answered, if the papers were returned to him he would try to have the errors corrected, as they were simply clerical. The papers were not returned, nor were the proofs approved, and no money was paid upon the policy issued to Brown. Subsequently an information was filed by the county attorney of Mitchell county, in this state, against the defendant, charging him with the forgery of the "undertaker's certificate" and the "clergyman's certificate" sent to the secretary of the National Union to obtain the payment of $5,000 upon the life policy taken out by Charles W. Brown in the National Union. Upon the trial, the defendant was convicted of forgery in the third degree, and sentenced to confinement and hard labor for the term of seven years. From the judgment he appeals to this court.

The contention of counsel for defendant is, that the making of the affidavit of the undertaker and the certificate of the attending clergyman could not, in this instance, be forgeries,

and in support hereof, cite the rule of criminal law that an instrument void upon its face cannot be the subject of forgery, because it has no legal tendency to effect a fraud. In support of this contention, it is claimed that the affidavit and certificate were a part of the "official notice and proof of death," and that all the papers constitute only one instrument; that other recitations in the instrument are so repugnant and irreconcilable to those set forth in the affidavit of the undertaker and the certificate of the clergyman, the whole death proof is a mere nullity and absolutely void upon its face. The claim of counsel is more plausible than sound. We concede that a writing invalid on its face cannot be the subject of forgery, but a false instrument, which is good on its face, may be legally capable of effecting a fraud, though inquiry into extrinsic facts would show it to be invalid, even if it were genuine; therefore the forging of such an instrument is a crime. (Sections 129 and 139 of the act regulating crimes and punishments; 2 Bishop on Crim. Law, 7th ed., §§ 538–541.) The papers headed "Official Notice and Proof of Death" embrace several separate and complete documents or written instruments. On page one we have a statement, with questions answered; on page two, the certificate of the attending physician, with the statement of an officer, under oath, that the attending physician is respectable, entitled to credit, and in active practice; on the third page there is a report of the council examining committee on the cause of death, and on the same page the undertaker's affidavit and the clergyman's certificate; on the fourth page are blanks for the medical directors and president of the senate. The undertaker's affidavit and clergyman's certificate, as executed, are complete and separate instruments, and are not defective or in any way invalid on their faces. It is true that all of these separate and independent instruments are necessary to complete the proof of death, but in our opinion the undertaker's affidavit and the clergyman's certificate as executed, are as complete and separate instruments as though they were wholly detached from the

*1. Forgery; instrument good on its face; extrinsic evidence.*

other papers constituting the proof of death.   We do not think that where a certain number of written instruments are required to be presented in connection with each other as indispensable to establish any alleged fact, that a person who falsely and fraudulently makes one or more of these written instruments is guiltless of offense because he does not falsely make all, or because in some of the other written instruments to be presented a discrepancy or defect occurs which prevents the accomplishment of his fraudulent purpose.   The undertaker's affidavit and the clergyman's certificate are in the exact form required, and we think are the subject of forgery, within the terms of the statute.   (Sections 129, 139, *supra*.)   The fraud of the defendant was not defeated by the form of the forged affidavit, or the forged certificate, but only through an examination of the other written instruments.   That these written instruments are connected or attached together, we do not think exculpates the defendant. The case before us is the same as where the invalidity of an instrument depends on some fact not appearing on its face; that is, not appearing upon the face of the forged paper or instrument.   (*People v. Galloway*, 17 Wend. 540.)

2. Forgery, facts constituting.

Complaint is made of the ninth instruction given by the court, to the effect that the crime of forgery is complete when the written instrument is made and forged with a criminal intent.   No exception, however, was taken to this instruction by the defendant, and therefore no question is before us concerning the correctness of the instruction for our determination. Complaint is also made of the reception of certain evidence, the giving of certain other instructions, and the refusal of the court to compel the state to elect upon which of the counts of the information it would rely for a verdict.   We have examined all of these matters, but we discover no errors in the proceedings affecting prejudicially the substantial rights of the defendant.   (Crim. Code, § 293; Wharton's Crim. Plead. and Prac., 8th ed., §§ 285, 290, 293; *Noakes v. People*, 25 N. Y. 330.)

The judgment of the district court will be affirmed.

All the Justices concurring.