[Crim. No. 116.   First Appellate District.—May 29, 1908.]

THE PEOPLE, Respondent, v. JOSEPH V. DI RYANA and ATTILIO CARTO, Appellants.

CRIMINAL LAW—FORGERY—PROOF OF LOSS TO FIRE INSURANCE COMPANY—CONSTRUCTION OF CODE.—Although the proof of loss to a fire insurance company is not one of the instruments specifically enumerated in section 470 of the Penal Code, it is an instrument recognized in the Penal Code, and by text-writers and decisions of courts, the functions of which in insurance matters are well known; and the counterfeiting of the handwriting of insured persons losing by fire, in the proof of loss thereof, is forgery under the general terms of section 470 of the Penal Code.

ID.—POSSIBILITY OF FRAUD AND INJURY.—Fraud and deceit are essential elements of the crime of forgery; and unless the counterfeited handwriting be of such a nature that some one might possibly be defrauded by it, the mere falsity of the writing is not an offense; but if it might possibly deceive another, and was prepared with intent to deceive and defraud another, it is immaterial whether any person was actually injured or not.

ID.—AVERMENT OF EXTRANEOUS FACTS—APPLICABILITY OF RULE.—When a forged writing is defective or unintelligible, and it cannot be seen in what way it could operate to defraud, then its capacity in that respect must be made to appear by averment of extraneous facts. But when, as here, the instrument is perfect and intelligible,

and its nature, extent and capacity can be seen and judged by the court itself, such rule does not apply, and no such averments are necessary.

ID.—UNNECESSARY ALLEGATIONS IN INDICTMENT.—The indictment for forgery of the proof of loss need not allege that a policy of insurance was issued to the persons whose names were forged, nor that the property was destroyed by fire. When the instrument on its face is valid, the indictment need not expressly allege every fact the existence of which is assumed by the forged document.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Wm. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

H. H. McCloskey, and Wm. S. Barnes, for Appellants.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

KERRIGAN, J.—The defendants were convicted of forgery. They moved for a new trial and in arrest of judgment, which motions were denied. From the judgment and from the order denying their motion for a new trial defendants prosecute this appeal.

The indictment alleges that the defendants committed the crime of forgery, "by falsely and fraudulently forging and counterfeiting the handwriting of Pasquale Solimena to a certain instrument in writing for the payment of money," which instrument was an ordinary form of proof of loss used by insurance companies. The document is as follows:

"To the Hamburg-Bremen Fire Insurance Co. of Hamburg, Germany.—By your policy of insurance No. 123915, dated March 23, 1906, issued to Solimena Bros. by Rudolph Herold, Jr., your agent at San Francisco, Cal., for the term of one year to the 23rd day of March, 1907, you insured the party herein and therein named against loss or damage by fire, to the amount of Two thousand dollars, as more fully appears by the printed portions and conditions of said policy, viz., 1000 on stock of lumber; 1000 on machinery, tools and

implements of trade, including motor, all while contained in frame building situate No. 814 East side of Battery street, between Broadway and Vallejo street, San Francisco, Cal.

"2. The property thus insured belonged to Pasquale Solimena and Alfonso Solimena, doing business as Solimena Bros. and no other person or party had any interest therein.

"3. The building was occupied by the following persons and occupations and no other person or persons: first floor, stores and assured manufacturing furniture and fixtures of wood; residences above.

"4. A fire occurred on the 20th day of April, 1906, at the hour of 10 o'clock A. M., by which the property named in the policy was destroyed or damaged as hereinafter set forth in detail.

"5. The whole value of the respective items of the property amounted to $————, which was the actual cash value at the time of the fire, as set forth in annexed schedule A.

"6. The whole amount of loss sustained is $1,000, as set forth in annexed schedule A.

"7. The whole insurance on said property at the time of the fire, including that above mentioned, was $2,000, and no more.   See Schedule B annexed.

"8.   We claim of your company its proportion of said loss, viz. $1,000, as per Apportionment Schedule B.

"9. The fire originated as follows, viz.   (State here fully the circumstances connected with the origin of the fire): from general conflagration, and premises were undamaged by earthquake.

"10. Nothing has been done by us or with our privity or consent to violate the conditions of insurance, or void the policy.

"Witness our hands at San Francisco this 31st day of May, 1906.

"PASQUALE SOLIMENA

"Of and for Solimena Bros.

"State of California

"County of San Francisco

"Personally appeared Pasquale Solimena, the signer of the foregoing statement, and made solemn oath that said state-

ment is just and true, according to the best of his knowledge
and belief.

"(Seal)     Before me,     THOMAS S. BURNES,
                              (or) Notary Public in and for
                                   the City and County of
                                   San Francisco, State of
                                   California."

The evidence shows that there was also forged by the de-
fendants an assignment of the interest in the claim of
Solimena Bros. under the policy of insurance to one of the
defendants. This assignment was presented to the Hamburg-
Bremen Insurance Company, with the forged instrument set
forth in the indictment, and thereupon the insurance com-
pany paid the defendants the insurance money, amounting
to $1,000. The charge of forgery here, however, is based on
the claim of loss alone.

The instrument set forth in the indictment is not one of
those specifically enumerated in section 470 of the Penal Code
which may be the subject of forgery, nor was the indict-
ment altogether framed on the theory that it was, for it will
be noted that it alleges that the crime was committed by
"forging and counterfeiting the handwriting" of Pasquale
Solimena to the named document. This allegation brings
the defendant within that part of section 470 of the Penal
Code which, in its terms, makes one guilty of forgery who,
with intent to defraud, "counterfeits or forges the seal or
handwriting of another"; in other words, one may be guilty
of the crime of forgery by counterfeiting the handwriting
of another to an instrument not specifically enumerated in
said section. Nevertheless, to constitute the crime of for-
gery the document forged or counterfeited must not only
be false and forged, but it must also be of such a character
as to be made available in law to work the intended injury
or fraud.

In the case of *People* v. *Turner,* 113 Cal. 280, [45 Pac.
331], the defendant forged a certificate of recordation on the
back of a deed, and it was contended that the act complained
of was not known to our law of forgery. The court, speak-
ing of the information, which was based on the same part
of section 470 as is the indictment here, said: "By the terms
of that section one who 'counterfeits or forges the seal or

handwriting of another' is guilty of forgery. Fraud and deceit are essential elements to the crime, and unless the counterfeited handwriting be of such a nature that some one might possibly be defrauded by it, the mere fact that it is a false writing is not sufficient to constitute an offense. But, on the other hand, if the counterfeit writing might possibly deceive another, and was prepared with intent to deceive and defraud another, then it becomes immaterial whether any person was actually injured or not.''

A proof of loss is an instrument recognized by the criminal law of this state (Pen. Code, sec. 549), by text-writers, and by the adjudicated cases of this and other countries. Its functions in insurance matters are well known. The writing in question was a complete and valid proof of loss, and, as such, possessed at least some seeming legal efficacy.

Having said this much about the general nature both of the indictment and the claim of loss, we turn to the objections urged by the appellant.

It is true that the indictment does not aver that there was a policy of insurance issued to Solimena Bros. by the said insurance company, nor, if there was such a policy, that the property insured was damaged or destroyed by fire, etc. Nor was it necessary, in our judgment, as contended by appellant, to allege these matters, for, according to the decisions in this state, it is unnecessary that the indictment should expressly allege every fact the existence of which is assumed by the forged document, when the instrument on its face is valid. Thus, in *People* v. *Todd,* 77 Cal. 464, [19 Pac. 883], the defendant was charged with forging a will, and it was held unnecessary to state in the indictment the fact that the testator had property that might be subject to the terms of the will. Again, in *People* v. *Bibby,* 91 Cal. 470, [27 Pac. 781], the defendant was charged with having forged an order of the trustees of a school district upon the county superintendent of schools for a requisition upon the county auditor for a warrant against the county school fund; and the court held that the order charged to have been forged was valid on its face, and therefore that it was unnecessary to allege the facts assumed in the forged order, such as the existence of the school district, or that the trustees whose names were signed to the order were the trustees of such districts.

In *Ex parte Finley,* 66 Cal. 264, [5 Pac. 223], a decree of divorce was forged, and the court said: "It is not necessary to hold that the recitals in a decree of divorce set out in the information are the equivalent of an express averment that the parties to the divorce were married. We hold that the marriage need not be averred. They may have been married, and on its face the writing shows that it may have been used to consummate a fraud."

In *People* v. *Turner,* 113 Cal. 280, [45 Pac. 331], the supreme court said: "But on the other hand, if the counterfeit writing might possibly deceive another, and was prepared with intent to deceive and defraud another, then it becomes immaterial whether any person was actually injured or not. It may be readily seen that one may be exposed to fraud and injury by a forged certificate such as this. He might rest under the assurance that the certificate carried with it that his deed was in fact of record and is subjected to injury, or perhaps to loss of the property at the hands of the forgers, who might thereafter sell or mortgage to an innocent third party, whose deed was placed of record." There, apparently, it was unnecessary to allege *aliunde* the ways in which the certificate might be used to effect an injury.

Appellant further contends substantially that, if it be assumed that the instrument is a complete proof of loss, it alone could not possibly work an injury on any person; that it might be the subject of forgery under certain conditions, but that those conditions must be pleaded in the indictment, or no crime is charged; and by way of illustration he says: "If in addition to the forged claim of loss there were a forged assignment from Solimena Bros. to the appellant, the two instruments taken together might tend to defraud." This position is untenable. It is true that whenever a forged writing is defective or unintelligible, and consequently it cannot be seen in what way it could operate to defraud, then its capacity in that respect must be made to appear by the averment of existing extraneous facts. (Hughes on Criminal Law and Practice, sec. 935; *Rembert* v. *State,* 53 Ala. 469, [25 Am. Rep. 639]; *State* v. *Willis,* 70 Minn. 403, [73 N. W. 178].) But when, as here, the instrument is perfect and intelligible, and its nature, extent and capacity can be seen

and judged by the court itself, this rule does not apply, and no such averments are necessary. (*Snell* v. *State*, 21 Tenn. 347; *People* v. *Ah Woo*, 28 Cal. 211; *People* v. *Todd*, 77 Cal. 465, [19 Pac. 883]; *People* v. *Van Alstine*, 57 Mich. 69, [23 N. W. 594]; Hughes on Criminal Procedure, sec. 943.)

McClain, in his work on Criminal Law, section 758, expresses the rule thus: "By the weight of authority it is sufficient if the instrument appears to be one that might be good and effectual, if valid, though the circumstances which would render it effectual do not appear."

In *Commonwealth* v. *Costello*, 120 Mass. 369, it is said that an indictment for the forgery of a bond to dissolve an attachment need not state in detail how the bond could have been used to defraud; "it is enough that it appeared from the character of the instrument, together with the provisions of the statute, that it might have been so used, in connection with other facts, real or simulated, either then existing or with which it was to be afterward connected."

From these authorities, and others to be presently cited, we apprehend that it was unnecessary to allege in the indictment the modes in which the proof of loss might be employed to deceive another. It, with a forged assignment or a power of attorney from Solimena Bros., or by some one impersonating either of them, could have operated to defraud the Hamburg-Bremen Fire Insurance Company. It thus clearly appears that some one could have been deceived and injured by a proof of loss such as this. In the case of *State* v. *Hilton*, 35 Kan. 338, [11 Pac. 164], one Brown had his life insured in the National Union, a mutual benefit insurance company. One of the officers of the company received notice that Brown had died. Upon receiving the notice he forwarded blanks for proof of death. The defendant was appointed a committee to investigate the cause of death of Brown, and after a short time the proofs of death were sent by defendant to the insurance company. These proofs were untrue because in fact Brown was not dead. The papers returned by the defendant to the company were headed "Official notice and proof of death," and embraced several separate and complete documents. On page 1 there was a statement with questions answered; on page 2 the certificate of the attending physician, with the statement of an officer

under oath that the attending physician was respectable, entitled to credit and in active practice; on page 3 there was a report of a council examining committee on the cause of death. Attached to the proof of death, and on page 3 thereof, there was an undertaker's affidavit and a clergyman's certificate. The defendant was charged with having forged this affidavit and certificate. The court said: "The undertaker's affidavit and clergyman's certificate, as executed, are complete and separate instruments, and are not defective or in any way invalid on their faces. It is true that all of these separate and independent instruments are necessary to complete the proof of death; but, in our opinion, the undertaker's affidavit and the clergyman's certificate, as executed, are as complete and separate instruments as though they were wholly detached from the other papers constituting the proof of death. We do not think that where a certain number of written instruments are required to be presented in connection with each other as indispensable to establish any alleged fact, that a person who fraudulently and falsely makes one or more of these written instruments is guiltless of offense because he does not falsely make all, or because, in some of the other written instruments to be presented, a discrepancy or defect occurs which prevents the accomplishment of his fraudulent purpose. The undertaker's affidavit and the clergyman's certificate are in the exact form required and we think are the subject of forgery. . . ."

It has been held in a number of cases that it is forgery to make an instrument with intent to defraud, although if it had been genuine other steps must have been taken to complete the instrument. (Hughes on Criminal Law and Practice, sec. 935.) We think the reasoning in those cases is applicable to this case. In *Commonwealth* v. *Costello,* 120 Mass. 367, quoted with approval in *People* v. *Bibby,* 91 Cal. 470, [27 Pac. 781], the defendant was charged with forging a bond to be used for the purpose of dissolving an attachment. It was contended that the bond was invalid in law because, not having been approved, it could not operate to release the attachment. In that case, before the bond could have been effectual to injure or defraud anyone, certain steps must have been taken, yet the court held it to be forgery although the steps never had been taken. The court said:

"It is contended that the bond alleged to have been intended to dissolve the attachment, could not have operated so to do, and that, as it was void for that purpose (the steps requisite to give it validity not having been taken) there could have been no forgery of it. It is true that the false making of an instrument merely frivolous, or one which upon its face is clearly void, is not forgery, because from its character it could not have operated to defraud, or been intended for that purpose; but, if the instrument is one made with intent to defraud, although, before it can have effect, other steps must be taken or other proceedings had upon the basis of it, then the false making is a forgery, notwithstanding such steps may never have been taken or proceedings had. . . . How this bond could have been used to defraud need not have been set out in the indictment in detail; it was enough that it appeared from the character of the instrument, together with the provisions of the statute, that it might have been so used, in connection with other facts, real or simulated, either there existing, or with which it was to be afterward connected."

There are other reasons apparent to us why the false making of the proof of loss in question could operate to injure another; but what we have said above may be deemed sufficient for the purposes of this case.

From what has been said it follows that the judgment and order should be affirmed, and it is so ordered.

Cooper, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 24, 1908, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1908.