State v. Jackson.

---

No. 26,257.

THE STATE OF KANSAS, *Appellee,* v. R. A. JACKSON, *Appellant.*

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS—*Permitting Jury to Smell Liquor—Misconduct During Trial—Entrapment.* The proceedings resulting in a verdict of guilty of selling intoxicating liquor considered, and *held:* Prejudicial error was not committed by permitting all the members of the jury to smell the liquor; neither the court nor the county attorney was guilty of misconduct; an instruction on entrapment was properly refused; and the verdict of guilty was not impaired by the fact the jury acquitted defendant of having in his possession the liquor he sold.

Appeal from Allen district court; ROBERT E. CULLISON, judge. Opinion filed October 11, 1926. Affirmed.

*Oscar Foust, John W. Brown* and *Kenneth H. Foust,* all of Iola, for the appellant.

*Charles B. Griffith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *Burney Miller,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was convicted of selling intoxicating liquor, and appeals.

Two federal prohibition agents went to Iola, and through a man

Criminal Law, 16 C. J. pp. 88 n. 44, 89 n. 47, 617 n. 12, 910 n. 64, 1085 n. 82, 1107 n. 28. Intoxicating Liquors, 18 A. L. R. 162.

named Bowen got in touch with a taxicab driver named Hill. Through Hill the agents got in touch with defendant, and purchased from him a jar of moonshine whisky for five dollars. Bowen and Hill were given to understand the agents were visiting Iola because they were interested in purchase of cement stock.

Between eight and nine o'clock on the morning of October 5, 1923, Hill took the agents to defendant's house, about a mile south of Iola, on the South Kentucky street road. Defendant had no liquor at his house, but said he would leave some with Hill. The agents returned to Iola and waited. Defendant did not report with promptness, and the agents concluded they would again go to defendant's house. On the way they met defendant, and returned to Hill's taxicab stand. After some conversation, the agents, defendant and Bowen got into Bowen's car, and Bowen drove northward on the state highway leading from Iola, a distance of about three miles. Bowen then turned eastward, drove a distance of about half a mile between two rows of hedge, and stopped the car. On the way defendant sat in the front seat with Bowen, and told Bowen where to go and when to stop. Defendant got out of the car and dug out of the ground a jar of moonshine whisky, brought it to the car, and delivered it to the agents, who paid him five dollars for it. On the way back to town defendant related to one of the agents some of his experiences as a bootlegger. The liquor was subsequently delivered to the sheriff, who produced it at the trial.

The state proved the liquor was whisky. Defendant produced an ex-bartender and an ex-liquor salesman, who smelled the liquid and pronounced it unfit for a human being to drink as a beverage. Defendant also produced a witness who said he was like a dog—he could smell a thing and tell whether he wanted it or not. After smelling the liquid he said he would not want any of it. The county attorney then requested the court to permit the jury to smell the liquor. The request was granted, the jar was passed to each one of the jurors, and each one smelled the contents. Defendant made timely objection to the proceeding, and contends the district court erred. A juror may not be permitted to give a verdict founded on his own private knowledge. He may not be cross-examined, and the grounds of his belief may not agree with the standards of legal evidence. The court of appeals of this state rendered some decision to this effect many years ago.

State v. Jackson.

Speaking generally, the argument in support of defendant's contention is sound. The issue raised by the defendant was not, however, whether the liquor was intoxicating or nonintoxicating, as in the court of appeals cases. The issue was whether its smell was such as to disclose unfitness for human consumption, and the court and jury observed the demeanor of defendant's witnesses when smelling. The liquor salesman educated his nose in an old permit drug store, where asafetida and a few other things were frequently kept in addition to the stock of liquor. His facial muscles should have become well disciplined under such training, but they exhibited paroxysm when he cautiously lifted the jar toward his nose. No photographer was in attendance at the trial, and the scene is lost to the movies. The physiognomy of the bartender, who was accustomed to mopping slops from the top of the bar and maintaining a poker face in the midst of groggery stinks, suffered violent convulsion when he took a whiff of the contents of the jar. Then there was the witness who likened himself to a dog; and his testimony renders it necessary to make a comparative study of the behavior of dogs and men. When a dog sniffs at a substance and determines it is not fit for consumption, what does he do? He takes his nose away from it, moves forward, and expresses his aversion in characteristic dog fashion, but he does not exhibit grotesquery by screwing his countenance. Any dog will keep within the proprieties, and will not be guilty of facial contortion in a public place on account of sense perception derived from contact of odoriferous particles with his olfactory organs. In this instance, when the witness smelled the moonshine, his reaction was decidedly undoglike.

It will be observed there was a gap in the proof to be bridged by inference. The jury were to derive a conclusion respecting potability from observing contortion of features of third persons. Ratiocination could be eliminated by utilizing a form of Dean Wigmore's autoptic proference, and the court, at the suggestion of the county attorney, adopted the very simple and quite universally approved expedient known in common parlance as trying it on the dog. It is generally known that white mule has a tremendous kick, but the members of the jury were good sports, and took the chance of having permanent waves put in their visages by smelling the contents of the jar. They did no more than exercise a faculty which they possessed in common with all men, and in view of the circumstances

under which the event occurred, and its outcome, this court is unable to declare, as a matter of law, that the district court was guilty of culpable negligence.

In the course of the trial defendant desired to introduce evidence that, previous to the time the prohibition agents made the visit to Iola which led to the transaction with defendant which has been described, the county attorney had become angry at defendant, and had been after him ever since. The court refused to admit the evidence, and in ruling said: "We have stopped trying county attorneys since I have been on the bench, and we will not start in again now." Defendant contends the remark of the court was prejudicial to him. Perhaps it was, but not in a legal sense, and the practice which has been established in the district court of Allen county is approved.

Defendant's request for an instruction to the jury on the subject of entrapment was properly denied. The subject was fully considered in the case of *State v. Driscoll,* 119 Kan. 473, 239 Pac. 1105. The syllabus reads:

"It is no defense to one who violates the prohibitory liquor law that an officer, in order to detect and prosecute him for the violation of the law, solicited him to obtain and sell intoxicating liquor to the officer and that his prosecution for the violations was based on the evidence so obtained."

In the course of his argument to the jury, the county attorney said the evidence was clear, was, as he believed, convincing, and showed defendant was a bootlegger. Objection was made to the county attorney's remarks. The court overruled the objection, and, without admonishing the county attorney, directed him to proceed with his argument. The objection, rather than the county attorney's argument based on the evidence, called for admonition.

The information contained several counts, two of which were submitted to the jury, one for possession of intoxicating liquor and the other for sale. The evidence related to a single transaction, and if defendant made any sale of liquor, it was the liquor which he dug out of the hedgerow, carried to Bowen's automobile, and delivered to the prohibition agents. The jury found defendant not guilty of having liquor in his possession, and found him guilty of selling liquor only. Defendant contends the verdict is inconsistent, and because the jury found he did not have in his possession the only liquor he could have sold, conviction of selling cannot be permitted

State v. Jackson.

to stand. The court has decided adversely to the contention. (*State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Brundige,* 114 Kan. 849, 220 Pac. 1039; *State v. Graves,* 120 Kan. 499, 501, 243 Pac. 1060; *State v. Hund,* 115 Kan. 475, 222 Pac. 766; *State v. Stewart,* 120 Kan. 516, 243 Pac. 1057.)

Each count of the information contained a separate charge, and is to be regarded in the same manner as if it were contained in a separate information. The verdict on each count is to be considered on its own merits, independently of the verdict on the other. The verdict of guilty is perfectly consistent with itself. If there be logical inconsistency between the verdict of guilty and the verdict of not guilty, there is no legal inconsistency between them. If there were, the verdict of not guilty merely discloses the lack of restraint on power of a jury to render a general verdict in a criminal case, and there is no ground for holding the verdict of not guilty should control instead of the equally authentic verdict of guilty. While there are cases to the contrary, these views are well sustained by competent authority. (*State v. Ridge,* [Mo. App.] 275 S. W. 59; *Weinecke v. State,* 34 Neb. 14; *Griffin v. The State,* 18 Ohio St. 438; *Selvester v. United States,* 170 U. S. 262; *Weiderman v. United States,* C. C. A. 8th, 10 Fed. [2d] 745; *Gozner v. United States,* C. C. A. 6th, 9 Fed. [2d] 603, and federal cases cited in the opinion; 35 Yale Law Journal, 1013.)

There is nothing else of sufficient importance in the case to require discussion, and the judgment of the district court is affirmed