No. 32,896

THE STATE OF KANSAS, *Appellee,* v. JOE MURPHY, alias GEORGE H. HERMAN, *Appellant.*

(65 P. 2d 342)

Opinion filed March 6, 1937.

*Hugh C. Larimer,* of Topeka, for the appellant.

*Clarence V. Beck,* attorney general, and *Lester M. Goodell,* county attorney, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a criminal prosecution for forgery. The first count charged the forging of a check and the second count the uttering of the same check. Defendant was acquitted on the former and convicted of the latter. He appeals and urges three grounds of error.

Appellant exchanged a check in the sum of $340 for two head of mules. Further facts will be narrated under the various contentions. His first contention is the trial court erred in refusing to give a requested instruction on the subject of forgery. While the forgery count is eliminated from this appeal, the instructions on the subject of forgery nevertheless remain vital as affecting the conviction of uttering. This is apparent as there could be no conviction for uttering unless the check was in fact forged by someone.

No objection was or is now made to instructions given. None of the instructions pertaining to the forging or counterfeiting of the check are abstracted by appellant. Appellee contends the instructions given were adequate and that the requested instruction was substantially embraced in the instructions given. It is the duty of every appellant to abstract such portions of a record as are essential to an intelligent review of the particular issue or issues involved. Unless that is done, obviously this court is in no position to review the error assigned. Under such circumstances we cannot say it was error to refuse to give the requested instruction. (*State v. Reilly*, 85 Kan. 175, 116 Pac. 481; *Spellman v. Street Railway Co.*, 87 Kan. 415, 124 Pac. 363; *State v. Husong*, 109 Kan. 84, 86, 197 Pac. 874.)

While appellee urges the application of the above rule, it has abstracted all of the pertinent instructions. Having the instructions before us, we need not rest the decision solely on the foregoing rule. An examination of the instructions given discloses the requested instruction was given in substance and that the instructions as a whole were adequate.

Appellant's second contention is, the verdict of guilty for uttering is inconsistent with the verdict of acquittal on forgery under the particular facts in this case. By statute in this state, although both forgery of a check and uttering of a check are classified as forgery in the second degree, yet each constitutes a separate and distinct offense. (G. S. 1935, 21-608, 21-609.) Assuming, under the facts in this particular case, the verdict was inconsistent, does that fact require a reversal of the conviction for uttering? Lawyers and courts have frequently observed conduct of juries which was completely devoid of logic. The stories of these varied experiences and observations, reduced to writing, would indeed provide most interesting reading. Supposing, however, in the instant case, the jury was derelict in its duty and should also have found appellant

guilty of forgery, would that fact justify this court in following the example of the jury and thus clear appellant on all counts? This court has held otherwise in cases where two parts of a verdict were utterly irreconcilable. (*State v. Brizendine,* 114 Kan. 699, 220 Pac. 174; *State v. Brundige,* 114 Kan. 849, 220 Pac. 1039; *State v. Hund,* 115 Kan. 475, 222 Pac. 766; *State v. Stewart,* 120 Kan. 516, 243 Pac. 1057; *State v. Jackson,* 121 Kan. 711, 249 Pac. 688; *State v. Axley,* 121 Kan. 881, 250 Pac. 284.) The conviction cannot be reversed on the ground of inconsistency.

Appellant's third contention is, the conviction on uttering is contrary to law and the evidence. The substance of the first argument under this alleged error is the evidence did not show the check was forged nor that appellant knew it to be forged. Proof of both of these elements was, of course, essential to conviction on the second count. (G. S. 1935, 21-608, 21-609.)

Appellant Murphy on April 29, 1935, came to the farm of John Maus, the complaining witness, and purchased two head of mules for $340. Testimony as to certain details of this conversation and as to other similar deals of appellant were sharply conflicting. The nature of the conflict in this testimony unquestionably led the jury to disbelieve much, if not all, of appellant's explanation of this transaction, and of his general business venture. We need narrate only such portions of the direct and circumstantial evidence as relate to the question of whether the check was forged and known by defendant to have been forged or whether he personally forged the name of the purported maker. Appellant claimed he was purchasing these mules for one Geo. H. Herman, and that in keeping with the custom among stock and mule buyers, Herman delivered checks to him signed in blank, so that the remaining portions might be supplied at the time of purchase. Appellant related how he had made a number of trips with the man he called Herman. Appellant prior to this transaction had purchased mules elsewhere with a check bearing the name of Herman as maker. That check was not paid. Just prior to the Maus transaction here involved, appellant introduced a man to some parties in Topeka as Herman. One of them testified he saw the man who was introduced to him as Herman write on some paper which looked like a check, and that this man handed it to Murphy and directed him where to go to buy these mules. The place was the farm of John Maus, the complaining witness. The so-called Herman had never

consulted John Maus concerning the purchase of mules. John Maus testified Murphy first wrote his name in the check as Frank Maus, and that when he corrected him Murphy tore up that check and prepared another check and inserted the correct name as payee. The latter is the check involved. The evidence disclosed the drawee bank of Kansas City, Mo., had no account with the purported maker, Geo. H. Herman. The officers made an extended investigation and search for a stock buyer by the name of Geo. H. Herman, in the state of Kansas, and in Kansas City, Mo. Between the date of the check, April 29, 1935, and the trial in November, 1935, no person by that name or occupation was found. They were unable to learn of any person by that name. No person by that name appeared at the trial to corroborate the testimony of appellant. The officers located the mules in the stockyards at Kansas City, Mo., and Murphy was near the location of the mules. The mules were shipped in the name of another person. Murphy did not draw down the pay for the mules. When he was arrested he claimed they had the wrong man, but he refused to divulge the name of the right man. An officer related the following conversation, at that place, with Murphy:

". . . I later came and sat down in the car where Mr. Murphy was at, and he wanted to know why he was being arrested, and I said, 'Well, that has been explained to you.' And he said, 'You just got the wrong guy, that is all.' He said, 'If you let me alone, this guy you should get owes me money too.' I says, 'Well, who is this guy?' He says, 'I ain't going to tell you.' "

At the time of the trial Murphy testified he had simply accompanied the so-called Herman on other trips in order to look for cattle he desired to purchase for himself. He had bought no cattle. This particular trip from Kansas City to Topeka appellant made in his own car with Herman, and, he testified, without compensation from Herman. The evidence disclosed appellant and a man called Herman purchased a span of mules from a farmer by the name of Martin Hauer, southeast of Topeka, for $325. This purchase occurred about a week before the one in question. As heretofore stated, the check for the Hauer mules was never paid. Appellant testified he just looked at a shorthorn bull at Hauer's place while Herman was inspecting the mules. Hauer, however, testified Murphy made the examination of the mules and the other fellow had nothing to say. Murphy testified he wrote nothing on the check to Hauer, but Hauer testified the other fellow began the

check and Murphy finished it. Relative to similar transactions in which appellant was involved, the court instructed the jury that it was permitted to consider similar transactions only on the issue of intent. As to the particular check involved in this action, appellant admits John Maus, the complaining witness, testified: "that defendant made out the check." Appellant asks this court to weigh that evidence by comparing the handwriting of the signature with that contained in the body of the check, the latter part of which appellant claims he inserted. That was the province of the jury. Testimony favorable to appellant might be narrated, but it could serve no useful purpose. The jury apparently chose to disbelieve it. That was its privilege.

In the verdict of guilty for uttering inheres the belief of the jury that the check was a forgery, and that appellant knew it to be a forgery. The conviction is based on direct and circumstantial evidence. There was direct evidence appellee executed this particular check. The question of his lack of authority to sign the name of Geo. H. Herman, if such person in fact existed, was determined upon circumstantial evidence. On the other hand, conceding the jury did not believe appellant signed this check, and conceding further that the question of whether he knew the check was a forgery depended entirely on circumstantial evidence, he is not entitled to a reversal at the hands of this court. The testimony fairly tended to show the guilt of appellant. Now, was there a basis in the evidence for a reasonable inference of guilt? If so, we must affirm the judgment. (*State v. Hunter,* 50 Kan. 302, 32 Pac. 37; *State v. Brizendine,* supra.) In the Brizendine case it was held:

"When considering on appeal the sufficiency of circumstantial evidence to sustain conviction of crime, the question before this court is not whether the evidence is incompatible with any reasonable hypothesis except guilt. That was a question for the jury and the trial court, and the function of this court is limited to ascertaining whether there was basis in the evidence for a reasonable inference of guilt." (Syl. ¶ 1.)

The second argument under appellant's third contention is, he could not be guilty of uttering under the facts in this case unless he personally forged the check, and the evidence failed to show this fact. The argument has been answered in part. It must fail for two reasons. First, it was not essential he should have personally signed the name of the purported maker in order to be guilty of forgery as charged in the first count. The jury by its verdict, among other

things, found he was in possession of a forged check. Such possession, without a reasonable explanation of how he acquired it, warranted an inference he himself had forged it or was a guilty accessory to the forgery. The verdict indicates appellant's explanation of how he acquired the check did not appear reasonable to the mind or conscience of the jury. Under these circumstances the conviction must stand. (*State v. Hunter* and *State v. Brizendine*, both supra.) The second reason the contention must fail is that if proof he personally made the check had been necessary, the evidence supplied it.

It is also urged the trial court erred in not granting a new trial by reason of newly discovered evidence. An examination of the affidavits offered in support of the motion discloses the trial court properly denied the motion for a new trial. The judgment is affirmed.