(832 P.2d 357)

No. 66,801

STATE OF KANSAS, *Appellee,* v. OTTO L. MEYER, *Appellant.*

Opinion filed May 15, 1992.

*Thomas M. Warner, Jr.*, of Pullman & Warner, Chartered, of Wichita, for appellant.

*Jeffrey E. Goering*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, P.J., GERNON, J., and DONALD L. WHITE, District Judge Retired, assigned.

GERNON, J.: Otto Meyer appeals his conviction for issuing or delivering a forged instrument.

Meyer's trial on forgery and issuing or delivering a forged instrument was to the court. The court found Meyer not guilty of forgery. The focal point of Meyer's appeal is whether an in-

dividual can be found guilty at a trial to a judge of issuing or delivering a forged instrument, when the same court found the defendant not guilty of forging the same instrument.

This criminal case grew out of a landlord-tenant dispute between Robert Walker and Otto Meyer. Walker agreed to rent an apartment owned by Meyer. The two of them agreed to meet later to execute a formal lease agreement. The lease was executed, specifying a term of six months. In addition to the lease, Meyer presented a document entitled "Rental Information." The bottom portion of the document contains several paragraphs that purport to be an agreement between the parties and states in part that the lessee agrees to "live in the unit *at least 12 months* to be *eligible for deposit refund.*"

Walker testified he signed the lease, an inventory sheet, and an inspection report, but did not sign the rental information sheet or give Meyer permission to affix his signature to the document. Walker moved out of the apartment after six months and contacted Meyer regarding return of the security deposit. Meyer eventually wrote Walker a letter in which he refused to return any of the security deposit and stated that: (1) Walker had violated the lease terms by allowing a second party to move into the premises, requiring extra clean-up; (2) rent payments were late; and (3) the rental information sheet required a tenant to live in a unit at least 12 months to be eligible for a deposit refund.

Walker denied he had ever seen the rental information sheet until a copy was provided to him by Meyer with the letter. Meyer testified he informed Walker about the rental information sheet and showed him a copy of what the document looked like. Meyer stated that the information needed for the form came from Walker and that he tried to arrange another meeting with Walker to complete the form, but Walker responded, "[N]o, you have all the information, just sign my name on it, just put my name on it. . . . I've already signed the lease anyway."

Meyer acknowledged he affixed Walker's signature to the rental information sheet by photocopying the signature from one of the other documents.

Two witnesses supported Meyer's position that Walker had authorized Meyer to sign Walker's name. One testified that Walker did not want to set up another meeting to complete the

document and told Meyer to "take care of it for me." The other witness indicated Walker stated, "[Y]ou can sign it for me. . . . I don't mind if you sign my name."

The trial court concluded there was sufficient reasonable doubt as to whether Meyer was guilty of forgery and found Meyer not guilty on that count. However, the court had no reasonable doubt that Meyer had sent the same document to Walker with intent to defraud and, therefore, found Meyer guilty of issuing or delivering a forged instrument. Meyer appeals.

On appeal, we must determine: (1) whether the rental information sheet was a "written instrument" subject to the provisions of K.S.A. 21-3710; (2) whether the alleged preexisting debt owed by Walker to Meyer prevented a finding that Meyer had the required intent to defraud; and (3) whether Meyer's acquittal on the charge of forgery required the trial court to also find Meyer not guilty on the charge of issuing or delivering a forged instrument.

Was the rental information sheet a "written instrument"?

Meyer argues his conviction should be reversed because the rental information sheet is not a "written instrument" within the meaning of K.S.A. 21-3710. Specifically, Meyer contends the document is unenforceable and, thus, is not "capable of being used to the advantage or disadvantage of some person." K.S.A. 1991 Supp. 21-3110(25). We disagree with Meyer's argument on this issue.

K.S.A. 1991 Supp. 21-3110(25) defines "written instrument" and provides:

" 'Written instrument' means any paper, document or other instrument containing written or printed matter or the equivalent thereof, used for purposes of reciting, embodying, conveying or recording information, and any money, token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."

The Kansas Supreme Court considered a similar argument by a defendant in *State v. Hilton*, 35 Kan. 338, 11 Pac. 164 (1886). In *Hilton*, the defendant submitted several affidavits and other documents to an insurance company in an effort to collect life insurance benefits. The documents were physically attached to each other. One of the documents listed a burial date of March

4, 1885, while other documents indicated the date of death was May 2, 1885; a discrepancy which the insurance company "at once" discovered. 35 Kan. at 347. The Kansas Supreme Court rejected the defendant's claim that his forgery conviction should be reversed based upon "the rule of criminal law that an instrument void upon its face cannot be the subject of forgery, because it has no legal tendency to effect a fraud." 35 Kan. at 347. The court concluded:

"We concede that a writing invalid on its face cannot be the subject of forgery, but a false instrument, which is good on its face, may be legally capable of effecting a fraud, though inquiry into extrinsic facts would show it to be invalid, even if it were genuine; therefore the forging of such an instrument is a crime." 35 Kan. at 348.

The court held that each document should be considered as a separate entity and, thus, the defendant's false affidavit could support a forgery charge. 35 Kan. at 348. The court reasoned:

"We do not think that where a certain number of written instruments are required to be presented in connection with each other as indispensable to establish any alleged fact, that a person who falsely and fraudulently makes one or more of these written instruments is guiltless of offense because he does not falsely make all, or because in some of the other written instruments to be presented a discrepancy or defect occurs which prevents the accomplishment of his fraudulent purpose. . . . The fraud of the defendant was not defeated by the form of the forged affidavit, or the forged certificate, but only through an examination of the other written instruments. That these written instruments are connected or attached together, we do not think exculpates the defendant. The case before us is the same as where the invalidity of an instrument depends on some fact not appearing on its face; that is, not appearing upon the face of the forged paper or instrument." 35 Kan. at 348-49.

Here, nothing on the face of the rental information sheet would reveal its invalidity. As noted, the bottom half of the document appears to establish an agreement between the parties. The purported agreement includes a number of terms commonly included in leases, including rent payment date, late fees, liability for damage, written notice to vacate, a provision excluding pets, and a clause concerning deposit refund.

We also reject Meyer's argument that the rental information form is not a legally binding contract, is not a promise to pay,

and is superseded by the lease agreement. The rental information sheet itself does contain a promise "to pay rent in advance."

We conclude the rental information sheet is not invalid on its face. Its invalidity can only be established by examining extrinsic facts. Therefore, Meyer's claim does not constitute a defense to a forgery charge.

Did the alleged preexisting debt prevent a finding that Meyer had the required intent to defraud?

Meyer next asserts the trial court erred by refusing to permit the introduction of evidence concerning his right to keep the security deposit under the terms of the lease. Specifically, Meyer contends he could not have acted with an intent to defraud if he was entitled to retain the security deposit under other provisions of the agreement, such as the late payment clause. Meyer cites no authority for this proposition, nor can we find any.

K.S.A. 1991 Supp. 21-3110(9) defines "intent to defraud" and provides: " 'Intent to defraud' means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."

Other jurisdictions that have considered the issue have concluded that even a valid debt or claim against the person whose name is forged is not a defense to a charge of forgery. In *The State of Iowa v. Wooderd*, 20 Iowa 541, 552-53 (1866), the court rejected the defendant's argument that the allegedly forged receipts represented a legitimate debt. The court's analysis included:

"A man cannot be the judge of the justness of his claim; and upon the assumption of its justice, fabricate or forge writings to evidence its existence. No man, and particularly no man's estate, would be safe if any such doctrine as that contended for by the defendant were to prevail.

"Because a man justly owes, but unjustly denies his indebtedness to me, shall I therefore be justified in signing his name to an obligation to pay it?

"The criminal intent which the law infers from forging an instrument, and using it as evidence of a claim against the person whose name is forged, cannot be negatived by proof that the claim was in reality a just one. That such is the law is put at rest beyond any doubt, by the case of the *Queen v. Hill*, 2 Moody & Cr., 300; S.C., 8 Car. & P., 274 (1838); and see also *Queen v. Cooke*, 8 Car. & P., 582; 34 Eng. C.L., 535; *Queen v. Beard*, Id., 143; S.C., 34 Eng. C.L.R., 329; *Queen v. Forbes*, 7 Id., 224; S.C.,

32 Eng. C.L., 497 (1835); *Queen v. Birkett*, Russ. & Ry. C.C.R., 86 (1805); *Perdue v. State*, 2 Humph. (Tenn.), 494 (1841)." *Wooderd*, 20 Iowa at 553.

See *Curtis v. State*, 118 Ala. 125, 129-30, 132, 24 So. 111 (1897); *Quertermous v. State*, 114 Ark. 452, 463-64, 170 S.W. 225 (1914) ("The fact that it was a just claim, or, rather, that the invalidity of it had not been established by evidence, does not affect the question of appellant's guilt of the crime of forgery."); *Jalbert v. State*, 366 So. 2d 1207, 1209 (Fla. App. 1979); *Commonwealth v. Peakes*, 231 Mass. 449, 456, 121 N.E. 420 (1918) ("His 'belief' that he had a right to resort to forgery and other illegal acts in collecting a debt which he claimed the corporation owed him, does not deprive the forgery of its criminal character, nor excuse its commission."); *Commonwealth v. Zaleski*, 3 Mass. App. 538, 543-44, 336 N.E.2d 877 (1975); *Morville v. State*, 63 Tex. Crim. 551, 553, 141 S.W. 98 (1911) ("and if such evidence had been introduced, it would be no defense to a charge of forgery. If one person should owe another, it would not authorize such person to sign his creditor's name to a check, and obtain money thereon, representing that such instrument had been signed by his employer."); *State v. Christopherson*, 36 Wis. 2d 574, 581-82, 153 N.W.2d 631 (1967).

Here, the trial court properly excluded evidence concerning the underlying security deposit dispute. We find that, even if Meyer had the right to retain the deposit under the lease, his attempt to retain the deposit under the terms of the rental information sheet represents an entirely separate matter, given the conflict concerning execution of that document. Whether Walker's right to the security deposit was altered or terminated upon some other basis is immaterial to the issue of whether the rental information sheet was used in an effort to convince him to "alter or terminate a right" by deception. The jurisdictions which have considered this issue have concluded unanimously that a valid underlying debt or claim will not excuse or justify an act of forgery.

Does Meyer's acquittal on the charge of forgery require the trial court also to find him not guilty on the charge of issuing or delivering a forged instrument?

Central to Meyer's appeal is his argument that the trial court's ruling finding him not guilty of forgery required the court also

to find him not guilty of issuing or delivering a forged instrument when the instrument in question was the same.

The Kansas courts have followed the rule that inconsistent jury verdicts do not require a reversal. In *State v. Shultz*, 225 Kan. 135, 142, 587 P.2d 901 (1978), the Kansas Supreme Court reiterated:

"Assuming, however, that the verdicts are inconsistent, mere inconsistency does not require a reversal. In *State v. McCorgary*, 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976), we said:

" '[T]he conduct of a jury is sometimes devoid of logic, and inconsistent verdicts may result. Even in cases where the two verdicts are irreconcilable the convictions will not be reversed on grounds of inconsistency. [Citations omitted.]' "

"It has been repeatedly held that the crimes of forgery and uttering a forged instrument are separate and distinct offenses and conviction of one is not dependent upon conviction of the other. [Citations omitted.]" *State v. Hicks*, 11 Kan. App. 2d 76, 80, 714 P.2d 105 (1986). In *State v. Murphy*, 145 Kan. 242, 65 P.2d 342 (1937), a jury found the defendant not guilty of forging a check but guilty of uttering the same check. The court rejected Murphy's claim that these allegedly inconsistent verdicts required a reversal of his conviction. The court reasoned:

"Assuming, under the facts in this particular case, the verdict was inconsistent, does that fact require a reversal of the conviction for uttering? Lawyers and courts have frequently observed conduct of juries which was completely devoid of logic. The stories of these varied experiences and observations, reduced to writing, would indeed provide most interesting reading. Supposing, however, in the instant case, the jury was derelict in its duty and should also have found appellant guilty of forgery, would that fact justify this court in following the example of the jury and thus clear appellant on all counts? This court has held otherwise in cases where two parts of a verdict were utterly irreconcilable. (*State v. Brizendine*, 114 Kan. 699, 220 Pac. 174; *State v. Brundige*, 114 Kan. 849, 220 Pac. 1039; *State v. Hund*, 115 Kan. 475, 222 Pac. 766; *State v. Stewart*, 120 Kan. 516, 243 Pac. 1057; *State v. Jackson*, 121 Kan. 711, 249 Pac. 688; *State v. Axley*, 121 Kan. 881, 250 Pac. 284.) The conviction cannot be reversed on the ground of inconsistency." 145 Kan. at 243-44.

The *Murphy* court then indicated that the appropriate standard of review is simply to determine whether there is sufficient evidence to support the allegedly inconsistent conviction. 145 Kan. at 244-46.

A similar conclusion was reached in *State v. White*, 207 Kan. 800, 486 P.2d 1381 (1971). In *White*, the defendant was acquitted by a jury on the charge of forgery, but the jury could not reach a verdict on the charge of passing or uttering the same instrument. At a second trial, the defendant was convicted of the charge. On appeal, the defendant argued the evidence was not sufficient to establish a forgery. 207 Kan. at 800-01. The Kansas Supreme Court rejected this argument and noted the defendant's earlier acquittal did not affect its analysis of the sufficiency issue:

"The mere fact that the jury at his first trial did not find defendant guilty of forgery did not preclude use of some of the same evidence at his second trial. The crimes of forgery and attempting to utter a forged instrument are separate and distinct offenses; conviction of one is not dependent upon conviction of the other." 207 Kan. at 803.

All the above appeals on inconsistent verdicts were the result of jury trials. There is a split in the authorities concerning the effect of inconsistent verdicts in a bench trial of a criminal case. No published Kansas case regarding inconsistent verdicts in a criminal bench trial has been located.

Preliminarily, the nature of an "inconsistent verdict" should be defined. One treatise has stated:

"Where an accused is charged with separate and distinct crimes, although of a similar character, in two or more counts, a verdict of acquittal on one or more counts and of conviction on the others is not ordinarily or necessarily inconsistent, at least where each offense requires different evidence or involves factual variations. When [an] accused is convicted on one count and is acquitted on another count, the test is whether the essential elements in the count wherein accused is acquitted are identical and necessary to proof of conviction on the guilt count." 23A C.J.S., Criminal Law § 1407.

See Annot., 18 A.L.R.3d 259, 287.

## Federal Courts

The federal courts have produced conflicting results on this issue. In *United States v. Maybury*, 274 F.2d 899, 901 (2d Cir. 1960), the United States Second Circuit Court of Appeals held that inconsistent judgments in a criminal bench trial constituted reversible error. In *Maybury*, the defendant was charged with two counts: making a forged check and uttering the same check. Maybury's defense was that he was authorized to sign the payee's name. The trial court found Maybury not guilty of forging the

check but guilty of uttering the check. 274 F.2d at 901. In reversing the conviction, the appellate court's analysis indicated: ·

"This Court explained in *Steckler* (7 F.2d at page 60):

" 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'

. . . .

"None of these considerations is fairly applicable to the trial of a criminal case before a judge. There is no 'arbitral' element in such a trial. While the historic position of the jury affords ample ground for tolerating the jury's assumption of the power to insure lenity, the judge is hardly the 'voice of the country,' even when he sits in the jury's place. If he deems an indictment multiplicious, he has only to say so, and the time for him to exercise any 'lenity' that he deems warranted is on sentence. There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he should be forbidden this easy method for resolving doubts. In civil cases inconsistencies in the findings of a judge are not tolerated, see *White v. State*, 1940, ·260 App. Div. 413, 23 N.Y.S.2d 526, and inconsistencies even in jury verdicts may call for corrective action. Fed. R. Civ. Proc. 49 (b), 28 U.S.C.; *Stetson v. Stindt*, 3 Cir., 1922, 279 F. 209, 23 A.L.R. 302; *Hartman v. White Motor Co.*, D.C.W.D. Mich. 1952, 12 F.R.D. 328. We do not believe we would enhance respect for law or for the courts by recognizing for a judge the same right to indulge in 'vagaries' in the disposition of criminal charges that, for historic reasons, has been granted the jury. *United States v. Dotterweich*, 1943, 320 U.S. 277, 279, 64 S. Ct. 134, 88 L. Ed. 48. We know the' role of logic in law is not unlimited; but 'Holmes did not tell us that logic is to. be ignored when experience is silent.' Since we find no experience to justify approval of an inconsistent judgment when a criminal case is tried to a judge, we think logic should prevail." 274 F.2d at 902-03.

An earlier case, *Bernhardt v. United States*, 169 F.2d 983 (6th Cir. 1948), appears consistent with the *Maybury* decision. In *Bernhardt*, the trial court originally convicted the defendant of both theft and embezzlement but, thereafter, corrected the judgment, finding the defendant guilty only of theft. On appeal, the court noted, "These are, of course, inconsistent crimes for embezzlement presupposes lawful possession and theft does not." 169 F.2d at 985. However, the appellate court concluded the trial court's corrective action prevented any reversible error.

### State Courts

In *Haynesworth v. United States*, 473 A.2d 366, 371 (D.C. App. 1984), the court held "that inconsistency in a trial judge's disposition of the various counts in an indictment does not warrant reversal unless there is also an inconsistency in the findings upon a fact common to the counts."

The Maryland Court of Appeals has concluded that inconsistent judgments in a criminal bench trial constitute reversible error. See *Shell v. State*, 307 Md. 46, 57-58, 512 A.2d 358 (1986). In *Shell*, the court reiterated:

"Thus, convictions based on inconsistent jury verdicts are tolerated because of the singular role of the jury in the criminal justice system. As stated in *Ford, supra*, 274 Md. at 553, 337 A.2d 81, there is a 'reluctance to interfere with the results of unknown jury interplay,' at least without proof of 'actual irregularity.' Ample precedent in Maryland and in other jurisdictions supports this practice. [Citation omitted.] The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it. . . .

"In the present case, however, the inconsistent verdicts were rendered by a judge, not by a jury. The *Ford* holding does not justify inconsistent verdicts from the trial judge." 307 Md. at 54-55.

See *Wright v. State*, 307 Md. 552, 576, 515 A.2d 1157 (1986) ("While inconsistent verdicts by a jury are normally tolerated, inconsistent verdicts by the court are not ordinarily permitted as a matter of Maryland common law.").

The Michigan courts have rejected inconsistent judgments from a criminal bench trial. See *People v. Williams*, 99 Mich. App. 463, 465, 297 N.W.2d 702 (1980). In *People v. Vaughn*, 409 Mich. 463, 466, 295 N.W.2d 354 (1980), a case which approved inconsistent verdicts from a jury trial, the Michigan Supreme Court commented:

"Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jurors reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason

for defendant's release. These considerations change when a case is tried by a judge sitting without a jury."

The New York courts will permit inconsistency in the "verdicts" from a bench trial. See *People v. Dixon*, 87 App. Div. 2d 828, 448 N.Y.S.2d 756 (1982); *People v. Pugh*, 36 App. Div. 2d 845, 846, 321 N.Y.S.2d 504 (1971), *aff'd* 29 N.Y.2d 909, 328 N.Y.S.2d 860, 279 N.E.2d 604, *cert. denied* 406 U.S. 921 (1972).

Several state courts, Indiana, Pennsylvania, and Illinois, have upheld a criminal conviction notwithstanding inconsistent findings in a bench trial. For example, in *Flowers v. State*, 221 Ind. 448, 449-50, 48 N.E.2d 56 (1943), the trial court acquitted defendant of rape but found him guilty of incest where "sexual intercourse is an essential element of incest." The appellate court noted the potential sentence for incest was less severe than for rape and commented, "This may explain, though it would not justify, the appellant's acquittal of rape." 221 Ind. at 450-51.

The Pennsylvania court, in *Commonwealth v. Harris*, 239 Pa. Super. 603, 606, 360 A.2d 728 (1976), in upholding an inconsistent verdict of the trial court, commented:

"The rule in Pennsylvania remains that a judge does possess the power to render such verdicts. [Citations omitted.] To deny judges that power would be to reduce the desirability of trial by a judge alone. We have consistently held that a decision by a judge without a jury has the same efficacy as a jury verdict.

. . . .

"Non-jury trials have worked very well in our system and have contributed to the reduction of case loads and the saving of considerable tax money. We should not weaken the non-jury trial system."

In *People v. O'Malley*, 108 Ill. App. 3d 823, 833, 439 N.E.2d 998 (1982), an Illinois appellate court upheld a criminal conviction despite inconsistent findings in a bench trial, stating:

"We believe that the vice in inconsistency is that it implies confusion on the part of the trial judge sitting as the finder of fact. Confusion suggests that the defendant was not proved guilty beyond a reasonable doubt. [Citations omitted.] Inconsistency is no longer considered a vice in jury cases because there are other explanations besides confusion for inconsistency: compromise to achieve unanimity and exercise of lenity. [Citation omitted.]

"We believe it is time to acknowledge reality and to recognize that there is another explanation, besides confusion, for a trial judge's inconsistent finding in a criminal case. There are many instances when a trial court desires to exercise lenity in much the same way a jury does. In certain

cases, it may be too late, or not appropriate, for the trial judge to exercise lenity in the sentencing of a defendant. The present case appears to be such a case. . . .

. . . .

"[W]e believe the following standard should be applied by appellate courts when reviewing inconsistent findings by a trial judge. Legal inconsistency in the finding should not, on a *per se* basis, require reversal of the conviction. Inconsistency is only one element to consider in determining the existence of proof beyond a reasonable doubt. When, as in the present case, there is a rational explanation for the inconsistent finding other than confusion, the inconsistency will not contribute to a determination that defendant was not proved guilty beyond a reasonable doubt." 108 Ill. App. 3d at 831-33.

We conclude the better approach, under the facts presented here, where the same document was involved at the same time with the same parties, is to reject such an inconsistent verdict in a criminal bench trial.

The rationale for permitting inconsistent jury verdicts is simply not applicable to a bench trial under these circumstances. There can be no argument that the inconsistency is the result of compromise or any effort to achieve unanimity with a bench trial. A trial court is bound by fundamental principles of logic and has a duty to explain its decisions. Our system simply has more tolerance of inconsistencies where a jury is concerned. A trial court is duty bound to apply the law in a nonarbitrary or capricious manner. A rule which would permit judgments which cannot be defended upon a logical basis would not enhance respect for the law, the courts, or the process. For an appellate court to uphold such a judgment, which on its face is illogical or arbitrary, would likely undermine respect for the courts.

Here, the trial court's findings are inconsistent and irreconcilable. The record discloses it was undisputed that Meyer affixed Walker's signature to the document, and the only issue was whether he had authority to do so. The trial court specifically concluded there was reasonable doubt as to this question and found Meyer not guilty of forgery. A conviction under K.S.A. 21-3710(1)(b) requires proof that the defendant issued or delivered a forged instrument and, thus, requires proof beyond a reasonable doubt that the instrument was forged, as defined by K.S.A. 21-3710(1)(a).

Under these circumstances, the trial court's findings are inconsistent and cannot be reconciled and, therefore, we are required to reverse Meyer's conviction.

Reversed.