NOT DESIGNATED FOR PUBLICATION

No. 125,891

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY MCFARLAND,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; NEIL B. FOTH, judge. Submitted without oral arguments. Opinion filed May 24, 2024. Affirmed.

*Jonathan Laurans*, of Kansas City, Missouri, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris. W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: A jury convicted Cody McFarland of aggravated indecent liberties with a child and blackmail. On appeal, McFarland does not challenge his conviction for aggravated indecent liberties with a child. Instead, he challenges the sufficiency of the evidence presented by the State in support of his blackmail conviction. In addition, he argues that the jury's verdict was inconsistent because the jurors convicted him of blackmail while acquitting him of sexual exploitation of a child. Finally, he contends that the district court erred in denying his motion for a dispositional departure to probation.

1

For the reasons set forth in this opinion, we find that there was sufficient evidence presented to support McFarland's blackmail conviction. We also find that the jury's verdict was not inconsistent. Finally, we find that the district court appropriately imposed a presumptive sentence pursuant to the Kansas Sentencing Guidelines. Thus, we affirm McFarland's convictions and sentence.

FACTS

Because McFarland challenges only his blackmail conviction and his sentence, we will briefly summarize the facts material to the issues presented on appeal. Accordingly, we will not address the facts relating to the unchallenged aggravated incident liberties conviction that involved another victim. To the extent it is necessary to do so, we will address additional facts in the Analysis section of our opinion.

In 2021, a jury convicted McFarland of one count of aggravated indecent liberties with a child and one count of blackmail. However, the jury acquitted him of one count of sexual exploitation of a child. Prior to sentencing, McFarland filed a motion seeking either a downward dispositional departure or a durational departure to probation. Ultimately, the district court denied the departure motion and sentenced McFarland to a presumptive sentence of 55 months in prison on the aggravated indecent liberties conviction and a concurrent sentence of 11 months on the blackmail conviction.

The blackmail conviction arose out of a relationship that McFarland had with a minor coworker. In 2018, when McFarland was 25 years old and the girl was 15 years old, the two began working together at a store. At the time, the girl lived with her aunt and uncle who were her legal custodians. According to the record, she referred to them as her parents.

2

In August 2020, the girl revealed to her aunt—whom she often called mother or mom—that she had been having sex with McFarland. (In this opinion, we will refer to the woman as the girl's aunt.) The girl also told her aunt that McFarland had been trying to blackmail her. As a result, the aunt took her to McFarland's apartment to confront him about the allegations.

After McFarland denied the allegations, the aunt asked the girl to give her some information that only she would know about him. In response, she gave her aunt a description of a unique article of underclothing that McFarland owned. Although he denied having the article of clothing, the aunt found it in his apartment. At that point, McFarland ordered the girl and her aunt to leave.

The aunt then contacted the Olathe Police Department and Officer Cameron Finley responded to McFarland's apartment. When he arrived on scene, the girl told the officer that she had started working with McFarland at a store when she was 15 years old and that she had sex with him approximately three times. She also told Officer Finley that McFarland had asked for nude photos of her when she was 15 and that she had complied with his request. The girl also reported that the last time she sent nude photos to McFarland on her cell phone was in the Spring of 2020.

The girl informed Officer Finley that she had deleted the nude photos as well as the text message communication regarding the photos from her phone. In addition, she told the officer that McFarland had threatened to tell her aunt about the photos if she did not come over to his apartment and have sex with him. The girl was able to describe various aspects of McFarland's apartment to Officer Finley, and he verified that her description was accurate. At trial, Officer Finley testified that the girl "was able to describe the specific layout of the room, certain pictures on the wall, [and] how the closet appeared."

3

Officer Finley testified at trial regarding an interview he conducted with the girl on September 1, 2020:

"Q. What did [the girl] tell you during that follow-up?
"A. She had said that after she sent the first photograph, that some time went by before he started asking for the next one. She had refused to send the pictures to him, but after awhile, she gave in and started sending him more pictures, and that's when he started using them as leverage to get her to come. And she had sent about 10 pictures in total.
"Q. What did she report that he said he would do if she did not come over?
"A. That he could call [her aunt] and tell her that [the girl] was sending him nude photographs.
"Q. And why did he want her to come over?
"A. To have sex."

In addition, the girl testified at trial. In doing so, she reiterated that McFarland requested nude photos of her when she was 15 years old and that she had complied with his request. She also testified that McFarland would instruct her how to pose for the photos. We note that she was granted immunity by the State for taking and transmitting the nude photos of herself while a minor.

The girl testified that when she was 16 years old, McFarland once again asked her to send him sexually explicit photos of herself on multiple occasions. She indicated that most of the requests were made by text while at least one of the requests was made over the phone. The girl testified that she deleted the text messages from her phone because she did not want to get caught. The State introduced into evidence an exhibit containing multiple photographic images from her cell phone that the girl testified were taken at McFarland's request.

The State also introduced into evidence an exhibit containing text messages between McFarland and the girl. In one text from October 2018, she told McFarland that she just got out of the shower, and he responded: "Hot. LOL." On June 14, 2019,

McFarland asked the girl if she wanted to call him. She testified that she believed it was on the phone that evening that McFarland requested that she send him a nude photo.

In text messages from July 22, 2019, McFarland asked the girl if she could come over to his apartment. When she responded that her aunt had not been in a good mood that day, McFarland said: "Please." In reply the girl responded that she would ask her aunt "if I grow a pair" and McFarland responded: "Now." The girl then told McFarland that her aunt was asleep, and he said: "You didn't try."

McFarland then accused the girl of lying. She replied: "I would have been lying to my parents if I had spent the night. I just feel like we'll get caught and then I can't see you anymore." Later on, after the girl apologized for not staying the night with him, McFarland sent a text to her saying: "Stop telling people stuff or I'm going to tell your [aunt]." He also texted: "I can't undo what I did. This is why I don't talk to you anymore because you'll tell everyone everything. I might as well tell your [aunt] the stuff you did." The girl testified that McFarland was referring to when she had sex with him at the age of 16.

The girl also testified regarding text messages she received from McFarland asking if she would do a "three-way" and he told her he was "into weird stuff." Further, she testified regarding text messages she received from McFarland expressing that he was upset with her. The prosecutor asked the girl: "Was that an issue you ran into in your relationship with [McFarland], that if you weren't able to do what he wanted, that he would get upset?" She responded: "Yes."

Additionally, the girl testified that McFarland would threaten to send the nude photos to her aunt if she did not come over and have sex with him. She testified the first time this happened was in the summer of 2019. She indicated that he made a similar threat sometime between May and July 2020. The girl testified that the thought of her

5

aunt receiving the nude photos terrified her, and she stated that she would have been humiliated.

Detective Jason Parks of the Olathe Police Department also testified at trial regarding his interview of the girl. In particular, the detective testified that he had inquired about her relationship with McFarland and about the text messages. According to Detective Parks, the girl told him that she had sent nude photos to McFarland, and that he used those photos as leverage to get her to go to his apartment. He also testified that she indicated that McFarland threatened to tell her aunt about the nude photos if she did not comply with his requests. Detective Parks stated that the girl told him there were at least four occasions that she went to his apartment.

Detective Parks also testified that he spoke with the owner of the store at which McFarland and the girl met. During this conversation, the detective learned that McFarland had a relationship with another minor girl who worked at the store. It was this relationship that led to McFarland being charged and convicted of aggravated indecent liberties with a child. As noted above, McFarland is not challenging the aggravated indecent liberties conviction, so it is not necessary for us to discuss the facts of that relationship in this opinion.

At trial, McFarland testified in his own defense. He testified that he began working with the girl who he was alleged to have blackmailed in 2016. He claimed that his relationship with her did not become intimate until she was 17 years old. McFarland denied ever asking her for nude photos and denied ever receiving a nude photo from her. He also denied threatening to tell the girl's aunt about any nude photos. He testified that his text message threatening to tell her aunt was actually about her drinking alcohol at work. On cross-examination, McFarland admitted that he was not truthful with law enforcement when he told them he had not been in an intimate relationship with the girl.

6

Even though he admitted to dating several minor girls, McFarland denied that it was common for him to date girls in high school.

At the sentencing hearing, a victim impact statement that was submitted by the girl as part of the presentence investigation report was presented for consideration by the district court. In the statement, she stated:

> "I now realize the signs and red flags of grooming. I was being taken advantage of when my self-esteem was low, and I was naïve about a grown man wanting my attention for his own sick pleasure. . . . I hope the sentence you hand down to him fits the charges he is guilty for. It will help some other young woman in the future."

In addition, McFarland spoke on his own behalf at the sentencing hearing. Although he maintained his innocence, McFarland also acknowledged that it was "wrong to have relationships with [the victims] at their age." He also suggested the victims were lying "about certain things." The district court then denied McFarland's departure motion and imposed the presumptive sentences for his crimes. In doing so, the district court explained its rationale in detail on the record.

Thereafter, McFarland filed a timely notice of appeal.

ANALYSIS

*The evidence was sufficient to support the blackmail conviction.*

On appeal, McFarland first contends the State failed to present sufficient evidence to establish that McFarland was guilty of blackmail under K.S.A. 2020 Supp. 21-5428(a)(1). When reviewing McFarland's challenge to the sufficiency of the evidence, "we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An

7

appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). In addition, we exercise unlimited review of interpretation of the blackmail statute. See *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

It is important to recognize that "'[a] conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.'" *State v. Rucker*, 309 Kan. 1090, 1093-94, 441 P.3d 1053 (2019). Moreover, we only reverse a conviction for lack of sufficient evidence "when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020).

As the parties are aware, K.S.A. 2020 Supp. 21-5428 can be charged in two ways:

"(a) Blackmail is intentionally gaining or attempting to gain anything of value or compelling or attempting to compel another to act against such person's will, by threatening to:

(1) Communicate accusations or statements about any person that would subject such person or any other person to public ridicule, contempt or degradation; or

(2) disseminate any videotape, photograph, film or image obtained in violation of K.S.A. 21-6101(a)(6) or (a)(8), and amendments thereto."

Here—consistent with the language of K.S.A. 2020 Supp. 21-5428(a)(1), and PIK Crim. 4th 54.480 (2023 Supp.)—the district court instructed the jury that it could convict McFarland of blackmail if the State proved:

"1. The defendant threatened to communicate accusations or statements about [the minor girl] that would subject [her] to public ridicule, contempt, or degradation.

"2. The defendant did so intentionally to:  compel or attempt to compel [the minor girl] to act against her will.

8

"3. This act occurred between the 1st day of May, 2020 and the 31st day of July, 2020, in Johnson County, Kansas.

At the close of the State's evidence, McFarland presented a motion for judgment of acquittal and a motion for new trial. The district court denied both motions, noting that McFarland's argument focused on the sufficiency of the evidence and that "his defenses should have been enough to raise a reasonable doubt with the jury." In rejecting this argument, the district court determined that "a reasonable jury could have concluded guilt beyond a reasonable doubt on the evidence submitted."

On appeal, McFarland asserts that the State failed to establish that he met the elements of K.S.A. 2020 Supp. 21-5428(a)(1). Specifically, he argues that the State failed to prove that he threatened to communicate "accusations or statements" that would have subjected the girl to public ridicule, contempt, or degradation. Rather, he suggests that the proper charge would have been under K.S.A. 2020 Supp. 21-5428(a)(2) because the allegation was that he threatened to disseminate nude photos.

McFarland would have us disregard the other evidence in the record upon which a reasonable fact-finder could have concluded beyond a reasonable doubt that he threatened to "[c]ommunicate accusations or statements" about the girl that would satisfy the elements of K.S.A. 2020 Supp. 21-5428(a)(1). For instance, the girl testified that McFarland not only threatened to send the photographs to her aunt but also threatened to "tell her everything that you've been doing." So, the evidence presented by the State was not confined solely to threats to disseminate the photos but also included McFarland's threats to tell the girl's aunt "everything" the two of them had done.

Furthermore, there is evidence in the record to show that the type of "accusations or statements" that McFarland threatened to disseminate were of a nature that a reasonable fact-finder could conclude beyond a reasonable doubt "would subject [the

9

girl] to public ridicule, contempt, or degradation." When the girl texted McFarland that she was sorry for not staying the night with him, he responded: "Stop telling people stuff or I'm going to tell your [aunt]." McFarland also texted: "This is why I don't talk to you anymore because you'll tell everyone everything. I might as well tell your [aunt] the stuff you did." According to the girl, McFarland was referring to her having sex with him when she was 16 years old.

The evidence also included the testimony of Detective Parks who testified that the girl told him that she had sent nude photos to McFarland and that he threatened to tell her aunt about them if she did not comply with his requests that she go to his apartment. In addition, the girl testified that McFarland's threats were not limited simply to a threat to disseminate the nude photos.

McFarland complains that the State introduced only one text message corroborating his threat to tell her aunt about what the girl had done and claims he was referring to the fact that he knew she was drinking. However, the lack of additional text messages goes to the weight of the evidence—which was a question for the jury to decide. Likewise, it was the jury's role to decide whether to believe the girl's testimony or to believe McFarland's testimony. Based on our review of the record, we conclude that the jury appropriately weighed the evidence and determined the credibility of the witnesses.

Regarding the question of whether there were additional text messages sent between her and McFarland, the girl testified that she deleted those sent between her and McFarland because she did not want to get caught by her aunt. Additionally, Detective Smith testified that although forensic technology can be used to recover some deleted files from cellphones, data may become inaccessible as it is deleted by the phone to free up space. Smith testified the overwriting process depended on the type of file, where it was stored, and how it was stored.

We find that the girl's testimony was sufficient—if believed by the jury—to support the blackmail conviction. Although text messages may have served as corroborating evidence, they were not necessary to prove the elements of the crime. Moreover, a reasonable fact-finder could have believed the girl's testimony that she deleted the messages to avoid being caught by her aunt. Similarly, a reasonable fact-finder could have believed the detective's testimony regarding the inability to recover text messages that the girl testified were deleted.

Next, McFarland argues the State failed to prove that the accusations or statements would subject the girl to "public ridicule, contempt, or degradation." K.S.A. 2020 Supp. 21-5428(a)(1). But a review of the record reveals that the girl testified that the thought of McFarland communicating information to her aunt made her feel "scared" and "terrified." She also testified that had McFarland carried out his threats, she would have been "humiliated."

We note that a common synonym for the word "degradation" is "humiliation." See www.thesaurus.com/browse/degradation. Consequently, we find that the girl's testimony that she would have been "humiliated" if McFarland had done what he threatened to do was sufficient to support the jury's finding that his threats "would subject [her] to public ridicule, contempt, or degradation." K.S.A. 2020 Supp. 21-5428(a)(1).

McFarland also appears to suggest that the State failed to present sufficient evidence that his threats compelled or attempted to compel the girl to act against her will. K.S.A. 2022 Supp. 21-5429(a). Here, the girl testified that McFarland attempted to get her to go to his apartment to engage in sexual activity by threatening to tell her aunt about everything she had done. Furthermore, the owner of the store that the girl and McFarland worked at testified that she told him that McFarland was "*making her do stuff* so that she didn't tell her [aunt.]" (Emphasis added.) Notably, the State does not have to prove that a

11

defendant compelled the victim to act, but only that he attempted to do so. K.S.A. 2020 Supp. 21-5428(a).

Based on our review of the record, we find that the State presented sufficient evidence at trial upon which a reasonable fact-finder could conclude beyond a reasonable doubt that McFarland made threats that compelled or attempted to compel the girl to go to his house to engage in sexual activity. Therefore, we conclude that the jury's verdict finding McFarland guilty beyond a reasonable doubt of blackmail based on the elements of K.S.A. 2020 Supp. 21-5428(a)(1) was supported by sufficient evidence.

*The jury's verdict was not inconsistent.*

Next, McFarland contends that the jury's decision to acquit him on the charge of sexual exploitation of a child is inconsistent with his conviction for blackmail. In response, the State contends that the verdict was not inconsistent and reiterates that the evidence presented at trial was sufficient to support a conviction under K.S.A. 2020 Supp. 21-5428(a)(1). Whether a jury's verdicts are inconsistent and should result in a new trial is a question of law over which we exercise unlimited review. See *State v. McKissack*, 283 Kan. 721, 733, 156 P.3d 1249 (2007).

In *State v. Beach*, 275 Kan. 603, 616, 67 P.3d 121 (2003), the Kansas Supreme Court held:

> "'Where an accused is charged with separate and distinct crimes, although of a similar character, in two or more counts, a verdict of acquittal on one or more counts and of conviction on the others is not ordinarily or necessarily inconsistent, at least where each offense requires different evidence or involves factual variations. When accused is convicted on one count and is acquitted on another count, the test is whether the essential elements in the count wherein accused is acquitted are identical and necessary to proof of conviction on the guilty count.

12

"'Hence, where the elements of the two offenses are identical, a verdict of not guilty on one count is inconsistent with a verdict of guilty on the other count. Also, a verdict which acquits accused of a crime which includes acts necessary to the commission of another crime for which he is found guilty is inconsistent. However, acquittal under a count charging a major offense is not inconsistent with a conviction under a count charging a lesser included offense.' 23A C.J.S., Criminal Law § 1407, pp. 347-48."

Here, the State was not required to prove the charge of sexual exploitation of a child to prove blackmail. As discussed above, the State did not rely exclusively on the evidence regarding McFarland's threats to show the nude photographs to the girl's aunt. Rather, a review of the record reveals that the State also presented evidence that McFarland threatened to tell the girl's aunt about everything she had done. While the girl testified that the threat related to sexual activity, McFarland claimed it had to do with underage drinking. Regardless, sexual exploitation of a child is not a lesser included offense of blackmail, which may encompass a broad range of behavior.

As this court has found, verdicts are not inconsistent "'if they can be reconciled in any manner upon any rational basis.'" *State v. Belone*, 51 Kan. App. 2d 179, 194, 343 P.3d 128 (2015) (quoting *State v. Meyer*, 17 Kan. App. 2d 59, Syl. ¶ 3, 832 P.2d 357 [1992]). Additionally, even when verdicts are viewed as inconsistent or irreconcilable, a conviction should stand if there is sufficient evidence to support it. 51 Kan. App. 2d at 194-95; see *State v. Herron*, 286 Kan. 959, 966, 189 P.3d 1173 (2008) (acquittal of underlying felony does not require reversal of a felony-murder conviction where there is evidence to support the conviction); *State v. Chaffee*, 36 Kan. App. 2d 132, 138, 137 P.3d 1070 (2006) (jury's inconsistent verdict not basis for reversal if sufficient evidence supports the conviction).

As our Supreme Court has explained, "[t]he conduct of a jury is sometimes devoid of logic, and inconsistent verdicts may result." *Beach*, 275 Kan. 603, Syl. ¶ 4. As such, a conviction should not be reversed based solely on the fact that it is inconsistent with the

13

jury's verdict on another charge. 275 Kan. 603, Syl. ¶ 4. Here, we find that the jury's verdict is supported by both the evidence and logic.

Sexual exploitation of a child under K.S.A. 2020 Supp. 21-5510(a)(1) requires that the State prove that a defendant "employ[ed], us[ed], persuad[ed], induc[ed], entic[ed], or coerc[ed]" a child "to engage in sexually explicit conduct with the intent to promote any performance." The State is also required to prove that the victim was less than 18 years old at the time of the exploitation. On the other hand, blackmail under K.S.A. 2020 Supp. 21-5428(a)(1) requires the State to prove different elements. As discussed in the previous section of this opinion, the State presented sufficient evidence to support the statutory elements of blackmail. Hence, we conclude that the verdicts in this case were not inconsistent.

*We do not have appellate jurisdiction to review a presumptive sentence.*

Finally, McFarland challenges the district court's decision to deny his request for a dispositional departure. Specifically, McFarland argues that that the district court disregarded two evaluations that opined that he lacked pedophiliac tendencies and was a low threat to reoffend. In addition, he suggests—for the first time on appeal—that the district court took judicial notice of its own files and records without first providing notice to the parties.

The record reflects that the district court denied McFarland's request for probation and instead imposed a mitigated presumptive sentence of 55 months' imprisonment for the primary crime of aggravated indecent liberties with a child. We note again that McFarland has not challenged his aggravated indecent liberties with a child conviction on appeal. As to the blackmail conviction, the district court imposed a concurrent 11-month presumptive sentence.

A presumptive sentence is a sentence within the range set forth in the sentencing grid, factoring in both the severity level for the crime of conviction and the defendant's criminal history score. *State v. Farmer*, 312 Kan. 761, 764, 480 P.3d 155 (2021). It is undisputed that McFarland's sentence fell within the presumptive sentence under the revised Kansas Sentencing Guidelines Act. As a result, we lack appellate jurisdiction to review McFarland's sentence. K.S.A. 21-6820(c)(1); *Farmer*, 312 Kan. at 764 (appellate court lacks jurisdiction to hear an appeal from the sentencing court's denial of a departure motion from a presumptive sentence).

McFarland also attempts to assert a legal challenge to the district court's decision to take judicial notice of affidavits and information presented in his presentence investigation report without providing notice to the parties under K.S.A. 60-409(c). A review of the record reveals that McFarland did not object to the district court taking judicial notice of the information in its records. Instead, he raises this issue for the first time on appeal. It is well settled that issues not raised before the district court cannot be raised on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022).

In addition, K.S.A. 60-404 provides that "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." Because McFarland did not object to the district court taking judicial notice of its records, he has also waived the issue. Finally, even if the issue were properly before us, we find a district court can take judicial notice of its own records. K.S.A. 60-409(b)(4); *State v. Lowe*, 238 Kan. 755, 759, 715 P.2d 404 (1986); *State v. Stine*, No. 124,568, 2022 WL 3132161, at *11 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 763 (2022).

15

CONCLUSION

In summary, we conclude that the State presented sufficient evidence upon which the jury could find beyond a reasonable doubt that McFarland was guilty of violating the provisions of K.S.A. 2020 Supp. 21-5428(a)(1). Likewise, we conclude that the jury's verdict was not inconsistent. Finally, we conclude that we the district court appropriately imposed a presumptive sentence in this case. Consequently, we affirm McFarland's convictions and sentence.

Affirmed.